# Selheimer *versus* Elder.

1. A claim for speculative damages for a tort in a case which presents no fixed standard by which those damages can be liquidated is not liable to attachment execution.

2. A railroad company entered upon and took part of the land of A. for railroad purposes without making compensation or giving bond according to law. Subsequently, B., having a judgment against A., issued an attachment execution thereon for the amount of A.'s claim against the railroad company for damages, summoning the company as garnishee. A. subsequently instituted proceedings against the company to recover those damages, assigning his claim at the same time to C.  Said proceedings resulted in an award to C. of a certain sum, which the company paid into court. A. feigned issue having been awarded between C. and B. to try whether said sum was subject to be B.'s attachment,—*Held*, that the claim of A. against the railroad company, while still unliquidated, was of such a character as was not liable to attachment.  *Held*, further, that the assignment to C. prevented the attachment binding the damages when they were liquidated by the award. *Held*, therefore, that the fund in court was not bound by the attachment.

May 24th 1881.  Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, J.J.  SHARSWOOD, C. J., absent.

ERROR to the Court of Common Pleas of *Mifflin county :* Of May Term 1881, No. 145.

Feigned issue, in attachment execution, between John B. Selheimer, assignee of George Saylor, plaintiff, against George W. Elder, assignee of Kirkpatrick, Kinsey & Co., defendants, to try the question whether a sum of money paid into court was

[Selheimer *v.* Elder.]

subject to an attachment execution which had been issued under the following circumstances:

The Sunbury and Lewistown Railroad Company in 1870 entered on lands belonging to George Saylor, without any agreement with Saylor and without having filed a bond as required by Act of Assembly, and constructed their railroad thereon.

On December 15th 1872, George W. Elder, assignee of a judgment for $205.24, obtained October 25th 1870, by Kirkpatrick, Kinsey & Co., against Saylor, issued an attachment execution against Saylor, defendant, and the Sunbury & Lewistown Railroad Company, garnishees.

On September 1st 1876, Saylor filed his petition to have his damages assessed against the railroad company, and on the same day assigned his claim for such damages to Selheimer. This proceeding resulted in an award to Selheimer of $493.34, which amount the railway company paid into court; and this feigned issue was awarded to determine whether said fund was bound by the attachment.

On the trial, the court instructed the jury to find a verdict for the defendants, JUNKIN, P. J., saying in his charge:

"Are damages for taking property by a railroad company which arise by an act of appropriation under the state power of eminent domain, and which do not rest in contract express or implied, the subject of attachment on what is commonly called attachment execution? We are not aware that this point has been decided. It must, therefore, be solved in the light of the statutes and analogous cases. It is certainly determined that the process of attachment is evidently founded upon and operates upon what must be regarded as demands, although not, technically, debts: Girard Fire Ins. Co. *v.* Field, 9 Wright, 133. Had Saylor a demand against the Sunbury and Lewistown Railroad Company when the attachment issued? That company had entered upon his land, appropriated a portion to the uses of its road, and they had given no bond. An entry under these circumstances is sometimes spoken of as a trespass and tort, as in McClinton *v.* Fort Wayne Road, 16 Smith 404. But the company is empowered to enter under the grant from the Commonwealth, first paying or securing the price, &c., and the remedy of the owner is to have his damages assessed under the law. [When an entry is made, the owner has a demand for the injury which he sustained, and although this demand is not the result of a contract with the owner, yet it is a demand which the law gives him, because his property has been taken, not against, but in accordance with law. Something has been taken from him by law, but it must be paid for. It is a legal right which he is authorized to enforce against the company; in

[Selheimer *v.* Elder.]

substance, is it anything but a debt? So many acres of land are taken, and they are to be paid for, just as if under a bargain and sale, except the price is not fixed,] and in McClinton *v.* Railroad, 16 Smith 409, Judge AGNEW takes this view when he says that whilst the compensation to the owner is often denominated damages, it is really the price of a purchased privilege. [Now, why should not such a claim and right be the subject of attachment?]

"It is contended, however, that the damages are unliquidated, and speculative, and that the machinery provided for their ascertainment is special and exceptional. True, they are unliquidated, but not speculative. There is no such thing as punitive damages; on the contrary, the standard of measurement is severely fixed by law. The viewers are to estimate and determine the quantity, quality and value of the land taken or occupied, or to be taken or occupied, allowing for the advantages or disadvantages which may or have resulted to the owner, and, having weighed all, determine whether any, and if any, what amount of damages, has been sustained. In Carland & Bierne *v.* Cunningham, 1 Wright 228, it is held that foreign attachment will lie for such damages resulting from the breach of a contract as may be reduced to certainty by a definite standard, but not where they are speculative, and it is said, on page 232, that that is all that is required, for *id certum est quod certum reddi potest*. [In the case of railroad damages the rule is fixed, the standard certain and known, and they are simply compensation for the injury sustained. There are no contingencies upon which the claim rests, it is a clear recognized right, to be liquidated by a view, which is to be conducted under the direction of positive statutory provisions, and the market value of the land taken is to be given. For these reasons we think this demand could be attached."]

Verdict, in accordance with the direction of the court, for the defendant, and judgment thereon. The plaintiff took this writ, assigning for error, *inter alia*, the portions of the charge inclosed in brackets.

*John A. McKee*, for the plaintiff in error.—The claim in this case being for unliquidated damages is not subject to an attachment execution; it is not capable of being reduced to certainty by a definite standard; it is a demand, but not definite enough to be classed as "personal estate," "goods and chattels," and "goods and effects;" it lacks tangibility, and is not attachable: Carland & Bierne *v.* Cunningham, 1 Wright 228; Girard Fire Ins. Co. *v.* Field, 9 Wright 132; Peebles *v.* Meed, Pittsburgh Legal Journal, January 5th 1881, p. 184. No relation of debtor

[Selheimer v. Elder.]

and creditor existed between George Saylor and the S. & L. & L. Railroad Co. Neither debt, assumpsit, nor covenant would lie to recover in this case ; at most there was only a liability to account according to the special mode prescribed by law, or to surrender the possession of the land occupied, as Saylor might elect, which is a very different thing from a liability for the payment of money: Caldwell v. Klotz, &c., 1 W. N. C. 164. But suppose Saylor had never applied to have his damages assessed. Then certainly the attachment would take nothing ; the attaching creditor could not have applied for the appointment of viewers to assess Saylor's damages. The owner of the land only can do that.

The court below admits the claim to be unliquidated, but not speculative. We cannot agree to this. In addition to the compensation allowed for the value of the land taken, the jury are to take into consideration and make just allowance for injuries done to the land not taken ; the cutting off the communications of the farm, of the barn-yard and barn ; the increased difficulties of access and inconvenience caused by the cuts through the land ; the shape and position of the fields; the cutting off of water ; the inconvenience of crossing the railroad. In assessing damages the whole tract must be considered, not merely the land taken. Dangers and delays, and depreciation from crossings are items of damage ; disadvantages to the rest of the property from the manner in which it may be cut, allowing for advantages from the road ; how much the burden of fencing the railroad detracts from the value of the land. While the damages to be recovered may not be exactly speculative, yet the various elements entering into consideration in assessing damages renders the amount recoverable very uncertain. In the very nature of the case, the standard for liquidation must be variable—the amount to be recovered cannot be determined by any fixed rule. What one jury would think a reasonable and fair compensation, under the same facts and evidence another jury might regard as exorbitant. It requires the instituting of proceedings by Saylor and the judgment of viewers as to whether or not the railroad company was liable to pay him anything. If the advantages were greater than the disadvantages, the viewers would award less damages than if the reverse were true.

*A. Reed*, for the defendant in error.—The claim for damages for land taken by a corporation under the right of eminent domain, though not certain in amount, is capable of being rendered certain ; and it is, under the terms of the Act of 1836 and the decisions thereunder, " a debt due to the defendant." It has, in fact, been rendered certain and the amount paid into court.

Under such circumstances, it would be bound by a foreign attachment, and the Act of Assembly makes attachment in execution subject to the same rules : Franklin Fire Ins. Co. *v.* West, 8 W. & S. 350 ; Sheetz *v.* Hobensack, 8 Harris 412. The assignment, made by the defendant after the attachment was levied, was subject to the attachment notwithstanding the debt was not liquidated until after the assignment, although susceptible of liquidation before : Franklin Fire Ins. Co. *v.* West, *supra.*

Mr. Justice PAXSON delivered the opinion of the court, October 3d 1881.

This record presents a number of questions that need not be discussed. The case turns upon the point raised by the second assignment of error, viz.: That the fund in dispute is not the subject of attachment.

The fund sought to be reached by the attachment was a claim by George Saylor against the Sunbury & Lewistown Railroad Company for entering upon and taking a portion of his land for railroad purposes. The company entered and took the land without any agreement with Saylor as to the price, and without having filed a bond as required by Act of Assembly.

We are of opinion that this claim is of such an uncertain and speculative character that it does not come within our attachment laws. There was no contract relation between Saylor and the railroad company ; on the contrary, the claim is for unliquidated damages for a tortious act. Such a claim has never been held to come within the attachment laws. It was said by THOMPSON, J., in Girard Fire Ins. Co. *v.* Field, 9 Wright 133 : "We cannot come to the conclusion that every unliquidated claim is without the reach of attachment process. The reason for the exception has sufficient ground to operate on in the exclusion from it of such claims as are contingent, and such as possess no fixed standard for liquidation like torts or damages for breach of contract. . . . They want tangibility, and are not attachable, nor would they be the foundation for the process." Even when the claim arises from a breach of contract it cannot be attached unless the damages can be reduced to certainty by a definite standard ; nor where they are speculative or incapable of being ascertained by a fixed standard : Carland *v.* Cunningham, 1 Wr. 228.

In the case in hand there is no fixed standard by which the damages can be liquidated. They are purely speculative. There are a large number of questions to be taken into consideration in ascertaining the damages in such cases which will readily suggest themselves to the professional mind. Moreover the damages could not be liquidated in this proceeding. The attaching

[Fosselman v. Elder.]

creditor could not try the question of the damage to Saylor in his attachment suit. Such damages can only be assessed in the manner designated by the Act of Assembly. The attaching creditor has no standing to petition for a jury. The owner of the land might not do so. He has his remedy by ejectment, and may prefer to pursue it.

It was said, however, that the attachment bound after the damages had been liquidated by the award of the jury. The obvious answer to this proposition is that Saylor assigned his claim to Selheimer before the award.

We need not pursue the subject further. It is too plain.

Judgment reversed and a *venire facias de novo* awarded.