# Krimmel *v.* Moss Cigar Company, Appellant.

*Corporations—Agreement by president—Building contract—Evidence.*

1. In an action against a corporation upon a verbal contract alleged to have been entered into by the president of the defendant corporation as agent for his company, and the plaintiff, a sub-contractor engaged in erecting brick work on defendant's building, the case is for the jury and a verdict against the defendant will be sustained where it appeared that the principal contractors had failed; that a sum of money was due from them to the plaintiff and that the latter had refused to go on with the work until paid; that the president of the defendant company, who was actively engaged in completing the building, saw the plaintiff and requested him to proceed and upon his refusal agreed to pay him the balance due and the contract price for finishing the work, whereupon the plaintiff resumed operation; that the president made other contracts which were ratified by his company; and that there was no reason why the president should have contracted in an individual capacity.

2. In such a case the question whether a receipt given by the plaintiff "in full payment of account to date," and also whether an attempt by the sub-contractor to collect the sum due him from the principal contractor by mechanic's lien were inconsistent with the contract as alleged by the plaintiff is for the jury.

*Practice, C. P.—Improper remarks of counsel—Objection—Failure to take exception.*

3. A new trial will not be granted because of the refusal of the court to withdraw a juror by reason of the use of improper language where upon objection the court compelled the attorney to withdraw his statement and the opposing counsel made no further objection and took no exception. Under such circumstances the inference is that counsel waived any objection they might have made to the improper remark.

Argued May 14, 1912.   Appeal, No. 52, Jan. T., 1912, by defendant, from judgment of C. P. Lancaster Co., Sept. T., 1910, No. 14, on verdict for plaintiff in case

of Charles Krimmel v. S. R. Moss Cigar Company, Incorporated. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.    Affirmed.

Assumpsit on a parole contract.    Before LANDIS, P. J. The opinion of the Supreme Court states the case.

The defendant offered in evidence the following letter, which was ruled out by the court:

"Lancaster, Pa., Feb. 28, 1908.

"To the S. R. Moss Cigar Company, Lancaster, Pa.

"We hereby notify you that we are unable to meet the current pay roll for labor on the building which we are erecting for you at the northeast corner of North Prince and West Lemon streets, Lancaster, Pa., and that on account of unexpected financial developments, we are unable to complete the same. And we hereby waive any notice or certificate, that may be required under said contract, previous to your entry upon said premises for the purpose of completing said building.

"H. G. and L. J. Dill,
"H. Gilbert Dill."    (3)

*Errors assigned,* among others, were (1) in refusing binding instructions for the defendant; (3) ruling on evidence.

*W. U. Hensel,* with him *Coyle* and *Keller,* for appellant.

*C. Eugene Montgomery* and *B. F. Davis,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, July 2, 1912:

In the court below, the only question in dispute was, as conceded by both parties, whether the defendant company had made a contract with Krimmel, the plaintiff, to pay him the balance due for brick already laid under the Dill agreement and for laying the brick to com-

plete the buildings. We think the testimony ample to support the plaintiff's contention that the defendant company through S. R. Moss, its president, made the agreement with him as alleged in his statement of claim. We do not know that the defendant company seriously denies that such contract was made with the plaintiff, but it strenuously contends that the contract was made with S. R. Moss individually and not with him for the defendant company. In the light of the facts disclosed by the evidence, we see little ground for such claim. The Dills, who were the contractors, had failed and were unable to complete their contract. The plaintiff was a sub-contractor under the Dills for laying the brick in the construction of a warehouse and factory. In December, 1907, there was a balance due Krimmel from the contractors which they did not and possibly could not pay, and he refused to proceed with the work because the contractors had not paid him in accordance with the terms of their agreement. If the testimony of the plaintiff is credible, S. R. Moss, the president of the defendant company and actively engaged in completing the warehouse and factory, saw the plaintiff and requested him to proceed with laying the brick. The latter declined. Moss then told the plaintiff that "he was president for the company and ought to see that the building gets finished." He said he had "twenty-two thousand dollars laying back for us to pay, for me to pay, if I will finish the building." Shortly thereafter, about December 20, 1907, Moss and the plaintiff had another interview. Moss again requested the plaintiff to complete the work, but he declined until, as he says, "somebody will pay me." Moss then told him that he would pay him the balance due from the Dills and pay him the contract price for completing the work. Under that agreement, the work was resumed by the plaintiff on December 20, 1907, and was finished in the spring of 1908.

Several witnesses on the part of the plaintiff, in addition to himself, testified substantially that Moss made the contract with the plaintiff. The latter's testimony, if believed, can leave little, if any, doubt that Moss was acting for the company and not for himself in making the agreement. All the facts point to that conclusion. Moss was the president of the company and gave the building operation his personal attention. It appears that he made a contract with the plaintiff for some additional work on the buildings, outside of the latter's contract with the Dills. This was accepted and paid for by the company. It is true Moss was a large stockholder and interested in the success of the company, but the evidence discloses no reason why he individually should pay the Dill deficit and the balance necessary to complete the brick work. It does not appear that the company was not able financially to compensate the bricklayer for his work. It is wholly improbable that Moss would, individually, have assumed to pay such indebtedness in view of the facts disclosed by the testimony. We think there was sufficient evidence to warrant the court in submitting the question and the jury in finding that the contract was made by Moss for the company.

We agree with the learned court below that whether the receipt and mechanic's lien contradicted the plaintiff's position that the defendant company had entered into an agreement with him to pay for the brick work was an argument to be addressed to the jury, and was not a sufficient reason for the court to direct a verdict for the defendant. The receipt given by the plaintiff was "in full payment of account to date," but it was conclusively shown that it was given for money due the plaintiff on a contract made by Moss with him to do work outside that to be done under the Dill contract. While the court submitted for the jury's consideration the receipt as bearing upon the question of whether a new contract had been entered into by the parties, it

necessarily could have little or no weight under the circumstances in determining that fact. The mechanic's lien and the affidavits thereto attached were evidence to go to the jury on the question of the new contract and the learned judge submitted them with proper instructions.

There was no harm done the defendant by excluding the Dill letter. We can see no good reason under the evidence why the plaintiff should recover for one portion of his claim and not for the other. By the contract on which he relies, the defendant company agreed not only to pay him for the work yet to be done on the buildings but also to pay him the money yet due him from the Dills. The contract is entire, and if the plaintiff has failed to establish any part of it he has failed to establish the whole agreement. The amount recoverable under the new contract would be the Dill deficit and the money to be paid on the subsequently completed work. It was, therefore, immaterial what time the letter was written notifying the defendant company that the Dills were unable, by reason of unexpected financial developments, to proceed with the work.

In the condition of the record we cannot sustain the fifth assignment alleging error by the court in refusing to withdraw a juror by reason of the use of improper language by plaintiff's counsel in addressing the jury. When the objection was first made the learned judge announced that he would withdraw a juror unless the plaintiff's counsel stated there was no evidence upon the subject of the remarks complained of. No definite ruling was then requested by defendant's counsel nor was any exception taken. Subsequently in his address to the jury a remark was made by plaintiff's counsel, which the defendant's counsel asked him to withdraw. The plaintiff's counsel then said he would modify the statement and did so. The defendant's counsel made no further objection, made no request for the withdrawal of a juror, and no exception was

asked for. Under these circumstances, we must infer that the counsel waived any objection they might have made to the remarks of plaintiff's counsel. In dismissing the motion for a new trial, the court, speaking of the alleged improper remarks of counsel, said: "It has been our custom, even when no objections have been raised by counsel, to interpose, so as to restrain conduct of this character; but we do not think, in this case, defendant's counsel are quite fair in urging the objection at this time. Though the remarks made to the jury were not supported by evidence, the jury were at once not only told so by the court, but, upon its insistence, by the counsel who uttered them. The case, as we have stated, was then proceeded with, without further interruption, and, now, after seemingly acquiescing in the settlement of the dispute and after taking the chance with the jury of a favorable outcome, such alleged misconduct should not relieve them from the adverse verdict. Knowing that a juror would be withdrawn if the retraction was not considered sufficient by them, they took their chances."

In several recent cases, we have reversed because of improper remarks made by counsel to the jury, and we have no intention of relaxing the rule announced in those cases. But if opposing counsel desire to invoke the protection of the trial court they must act promptly and call the court's attention to the objectionable language and give it an opportunity to deal with the offender as the facts may require. This is only fair to the court. If it then declines to act, the injured party should insist on his objection and take an exception to the ruling. He cannot, by his silence, be permitted to leave the impression that he is satisfied with the court's action in the premises, and after the rendition of an adverse verdict, have the verdict set aside, or the judgment thereon reversed by the appellate court. In the case at bar, the court would have withdrawn a

juror had the defendant's counsel insisted on their objection. Having failed to do so, they are not in a position to ask this court to reverse for an error in which they impliedly at least acquiesced.

The judgment is affirmed.