## Meyer v. Pianti et al.

Argued April 10, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Frank B. Quinn,* and with him *Charles H. English* of *English, Quinn, Leemhuis and Tayntor,* for appellant.

*S. L. Gilson,* for appellee.

OPINION BY KELLER, J., July 14, 1933:

The proceeding below was an attachment in execution, under which the judgment creditor, (Meyer), attached in the hands of the garnishees, ( (1) Bloeser's Estate and (2) Lyman Felheim Co.) any moneys due by them respectively to the judgment debtor, (Pianti), or which the last named was entitled to demand from them or either of them. Plaintiff's right of recovery in this proceeding was based on the premise that the garnishees owed money to the judgment debtor, Pianti, or had money in their hands belonging to him, which he had a legal right to require them to pay to him, except for the attachment. If Pianti had no such right, if the garnishees, respectively, had no money in their hands belonging to him, or owed him nothing which he was entitled to recover by action against them, then the plaintiff in this attachment can recover nothing from the garnishees: Austin-Nichols & Co. v. Union Trust Co., 289 Pa. 341, 346, 137 Atl. 461; Lane's App., 105 Pa. 49, 65. We are not here concerned with any promise which may have been made by the garnishees,

or either of them, to Meyer, and on which he may have an enforceable action in assumpsit against them or either of them, (Krimmel v. S. R. Moss Cigar Co., 237 Pa. 253, 85 Atl. 154), if within the Statute of Frauds, (Birking v. Darnell, Salkeld 27; 1 Sm. Leading Cases 458, 484, 6th Am. Ed.). That question does not arise, and may not be considered, in this case. These preliminaries must be kept in mind.

The facts are not substantially disputed and may be stated as follows:

William Bloeser was the owner of a tract of land on East Twelfth Street, in the City of Erie, on which he proposed erecting a new building. On May 19, 1928, he entered into a contract with Caesar Pianti, as contractor, to erect the building for the sum of $30,540, of which 90% was to be paid the contractor from time to time, proportioned to the labor and materials incorporated in the work and the necessary materials delivered on the job, and the balance was to be paid on substantial completion of the work and full performance of the contract. On the same day Bloeser entered into an agreement with Lyman Felheim Company, which recited that he had the same day executed and delivered to the Felheim Co., as mortgagee, a mortgage on said real estate in the sum of $41,000 to secure present and future advances made by the mortgagee to him or for and on his behalf. The purpose of this agreement was two-fold. First, it provided what the mortgagee should do and pay, viz.: "(a) That the mortgagee shall pay from said mortgage money the existing encumbrances against the property described in said mortgage, estimated at about seven thousand ($7,000) dollars, so that said mortgage shall be a first mortgage and a first lien upon the property therein described. (b) That the mortgagee shall furnish to the owner or upon the owner's order to the contractor, Cesare Pianta, lumber and materials to be used in the

construction of said building on the property described in the mortgage, and the mortgagee shall receive credit for the value of the materials so furnished and deduct the amount of the same from said mortgage money. (c) That the said mortgagee shall pay to Cesare Pianta, contractor, such payrolls for labor done and performed incident to the erection and construction of said building on said property as shall be approved by the owner, not however, for more than ninety (90%) per cent of the actual work performed, and the mortgagee shall receive credit for and shall be entitled to deduct the amount of such payrolls, so paid, from said mortgage money remaining in its hands. (d) That the mortgagee shall receive credit for the sum of two thousand fifty ($2,050) dollars, which amount it shall be entitled to deduct from the mortgage money in its hands as the consideration for the labor it shall perform incident to bookkeeping transactions that will be necessary in the matter and also as compensation to it in disposing of this mortgage to some third person, firm or corporation. (e) That any balance of said mortgage money remaining in the hands of the mortgagee after all such payments shall be made, shall when building is completed be credited upon the amount of the mortgage." Secondly, it provided that, for the purpose of assuring the mortgagee and the tenant of the first floor, (Erie Hupmobile Co.), that the interest and taxes would be paid, Bloeser thereby constituted and appointed Union Trust Co. of Erie its exclusive agent for five years, the term of the mortgage, to collect and receive all rentals to become due from the first floor of the building to be constructed, and apply the same first to the payment of insurance premiums and taxes assessed against the property, and then to the payment of interest to become due and payable on the mortgage. Any balance not required for such purpose to be paid by the agent to the owner

from time to time as they might determine. Any interest not so paid by the agent was payable by the owner as provided in said mortgage. The mortgagee and the tenant of the first floor were declared to be vested with an interest in such agency and that the same was irrevocable during the term of said mortgage.

Proceeding under said agreement the Felheim Co. paid off the existing encumbrances, so as to make the new mortgage a first mortgage lien. It furnished lumber and materials to the contractor from its own yard and depot to the amount of over $7,000; it paid for materials, which it, in effect, bought from outside parties and furnished the contractor, because the latter had not the credit, about $12,000; it paid Pianti for payrolls,—not exceeding 90%—$9,150; it paid itself for labor and compensation, as provided in the agreement, $2,050; and the difference between the principal of the mortgage and the sum of all these payments was $3,522.52, which Felheim Co. contends must be credited on the mortgage, so that the amount thereof will be reduced to $37,477.48, representing the amount actually advanced by the mortgagee to the owner. The total amount received by Pianti, the contractor, from Felheim Co. by way of labor and materials was equal to 90% of the contract price.

Meyer, the present plaintiff, was a sub-contractor of Pianti for the heating and plumbing, under separate contracts amounting to $4,750. He received payments on materials from the Felheim Co. to the amount of $2,790.23, leaving a balance of $1,959.77, on which he secured judgment against Pianti in the amount of $2,235.68, to satisfy which the attachment in suit was issued.

In passing upon the questions involved in this appeal we regard the following matters as established:

(1) While the mortgage to secure advances from

the Felheim Co. to Bloeser was in the amount of $41,000, the Felheim Co. did not agree to advance that amount of money to Bloeser unless it was needed to cover items a, b, c and d in the agreement. Any difference between the face of the mortgage, $41,000, and the sum of the payments for items a, b, c and d, was not to be paid to Bloeser, but the mortgage was to be decreased by that amount. The mortgage was not executed to cover a flat mortgage debt of $41,000, but was given only to secure present and future advances, not exceeding $41,000; and the debt due under the mortgage was only the money so advanced. Interest was only due and payable on the amounts as advanced, and in case of foreclosure a judgment on the scire facias would be limited to the sum of the amounts so advanced, with interest. The Felheim Co. never had $41,000 in its hands belonging to Bloeser, to be paid out pursuant to directions by him; on the contrary, there was due and owing by Bloeser, because of the mortgage, only such amounts as were advanced under clauses a, b, c and d of the agreement; and any difference between the sum so advanced and the principal of the mortgage never became a debt at all, but required a corresponding reduction in the mortgage. Hence, after advancing the moneys required by paragraphs a, b, c and d of the agreement, the Felheim Co. had no money in its hands due and owing to Bloeser or which Bloeser could have required the Felheim Co. to pay him.

(2) We are not required in this case to decide whether or not Piànti had a right of action against the Felheim Co. under the agreement between it and Bloeser. The appellant relies on the case of Greene County v. Southern Surety Co., 292 Pa. 304, 141 Atl. 27, (But see Com. to Use, Etc. v. Great American Ind. Co., 312 Pa. 183), in which the Pennsylvania decisions from Blymire v. Boistle, 6 Watts 182, down,

are reviewed by Mr. Justice KEPHART, and the general rule is there stated that "where the contract is for the benefit of the promisee, or, in other words, where the third person is a creditor beneficiary, there can be no recovery. In the case of a donee beneficiary, or where the contract is made for the sole benefit of a third person, there may be recovery only where the consideration for the promise is a transfer of property or money to the promisor, or where unusual circumstances are present." On the other hand, the appellee cites the case of Brill v. Brill, 282 Pa. 276, 280, 127 Atl. 840, in which it was said that "the test of the third person's right of action seems to depend upon the question as to whether the promise is made primarily for the benefit of the other party to the contract or of the third person, that is to say, whether the payment is in relief of the promisee, and the fact that the money is to be paid to the third person is merely a matter of arrangement or convenience for the other party to the contract, or whether the primary purpose and object of the promise are to benefit the third person." See also, Washington Steel Form Co. v. North City Trust Co., 308 Pa. 351, 162 Atl. 829. We are satisfied that the agreement between Bloeser and the Felheim Co., as to payments to be made by the latter to Pianti, was made primarily for the benefit of Bloeser, and that the paragraph as to the payment of the money to Pianti was merely a matter of arrangement or convenience between Bloeser and the mortgagee, and that it was not the primary purpose and object of the promise to benefit Pianti. But irrespective of our opinion on the subject, Pianti could certainly obtain no rights under the agreement greater or higher than were specifically provided for him, and by clause c of the agreement any rights which he might have, which could be enforced for his benefit as against the Felheim Co., were

limited to 90% of the payrolls for labor. It is undisputed that the Felheim Co. has fully paid to Pianti all that it agreed to pay under clause c of the agreement.

(3) The mortgagee did not agree to furnish to the owner, or upon the owner's order to the contractor, *all* the lumber and materials to be used in the construction of the building, but only that he would furnish to the owner, or, upon the owner's order, to the contractor, lumber and materials to be used in the construction of the building and that for the materials so furnished the mortgagee should receive credit and deduct the amount of the same from the mortgage money. There is no evidence in the case that the owner ever ordered or directed the Felheim Co. to furnish or pay to the contractor, Pianti, or his subcontractor, Meyer, the amount of the latter's claim for plumbing and heating, pursuant to which the amount thereof would become payable by the Felheim Co. under paragraph b of the agreement.

It is clear, from the foregoing, that the Felheim Co. had in its hands, at the issuing and serving of the attachment, no money which was due and payable to Bloeser, or his executors, by reason of the mortgage to secure advances; but that under the terms of the agreement the principal of the mortgage was to be reduced by any amount that was not advanced under clauses a, b, c and d of the agreement. It is likewise clear to us, that as Pianti had received full payment of all the money which the agreement between Bloeser and the Felheim Co. required the latter to pay him, he had no right or claim to compel any further payment to him by the Felheim Co.; and as Meyer, the plaintiff in the attachment, stands only in Pianti's shoes and can only recover from the Felheim Co. as garnishee, such sums of money as Pianti could legally demand from it, he is not entitled to a judgment

against the garnishee, Lyman Felheim Co., and the judgment so entered must be reversed.

The Bloeser Estate is in a somewhat different position. To the extent that Pianti is a creditor of that estate, the plaintiff in the attachment, Meyer, has a right to demand that the claim, or dividend thereon, payable to the creditor shall be paid to him, up to the amount of his judgment against Pianti, (Act of June 16, 1836, P. L. 755, 22d section, p. 765); but the judgment to be entered in the attachment against the executors is not *de bonis propriis*, but only against them *qua* executors for the amount of the plaintiff's judgment, to be levied of the moneys payable as a claim or dividend to the defendant, Pianti, out of the estate of the decedent: Maurer v. Kerper, 102 Pa. 444. The record printed on appeal does not show whether any action was brought by Pianti against Bloeser's executors within a year after his death, as required by the Act of June 7, 1917, P. L. 447, 476, Sec. 15 (a), in order to preserve his lien against the decedent's real estate. If this was not done, the personal estate is so small as to be practically nothing. The form of the judgment, in any event, requires a reversal: Maurer v. Kerper, supra.

Appeal No. 128, April Term, 1933. The fourth assignment of error is sustained, the judgment against Raymond W. Bloeser and Esmeralda K. Fowler, executors of the will of William Bloeser, deceased, is reversed and judgment is directed to be entered against the appellants, qua executors, for the amount of the plaintiff's judgment to be levied of the moneys payable as a claim or dividend to the defendant, Caesar Pianti, out of the estate of the decedent.

Appeal No. 129, April Term, 1933. The assignments of error are sustained. The judgment against Lyman Felheim Company is reversed and judgment is now entered in its favor non obstante veredicto.