In the Matter of J. ROBERT
PIERSON, INC., Debtor.

LONDON GROVE CONTRACTORS,
INC., Appellant/Plaintiff,

v.

J. ROBERT PIERSON, INC., et al,
Appellee/Debtor-Defendant.

Civ. A. No. 84–1486.
Bankruptcy No. 82–00292 G.
Adv. No. 83–1703.

United States District Court,
E.D. Pennsylvania.

Nov. 27, 1984.

Randall C. Schauer, West Chester, Pa.,
for appellant/plaintiff.

Janet M. Sonnenfeld, Philadelphia, Pa., for appellee/debtor-defendant.

## OPINION

LUONGO, Chief Judge.

This bankruptcy appeal was filed by London Grove Contractors, Inc. (London Grove), a judgment creditor of the debtor, J. Robert Pierson, Inc. (Pierson). London Grove seeks to overturn a bankruptcy judge's order denying its complaint for relief from the automatic stay provision of the Bankruptcy Code with respect to a settlement fund which was created in favor of Pierson after Pierson filed a petition for relief under Chapter 7.[1] The bankruptcy judge, in an opinion accompanying his order, ruled that London Grove had not obtained a valid lien in the settlement fund before the debtor filed for relief. The bankruptcy judge also ruled that London Grove's lien could not be enforced against the settlement fund after the debtor declared bankruptcy because of the automatic stay imposed by the Code. For the reasons discussed below, I will affirm.

### I.

The facts of this case were set forth in *London Grove Contractors, Inc. v. J. Robert Pierson, Inc.*, 36 B.R. 853, 854 (Bankr. E.D.Pa.1984):

Marker & Marker, Inc. ("Marker"), was the builder of homes in a development in Concord Township, Pennsylvania. To aid in the completion of the project Marker contracted for the services of the debtor who in turn subcontracted much of the work to London Grove Contractors, Inc. ("London Grove"). Marker subsequently defaulted on the contract and failed to pay the debtor for work previously completed, which caused the debtor to default on its payments to London Grove. In state court, the debtor filed a complaint against Marker to which the latter filed an answer and counterclaim. In the same court London Grove instituted suit against the debtor upon which a default

judgment of $49,416.50 was entered on June 21, 1981. In July of 1981 London Grove caused the issuance of a writ of execution against Marker, as garnishee, and the debtor. The said garnishment action was predicated on the debt owed by Marker to the debtor which was the subject of the above described action between these two parties. The debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on January 25, 1982, although it has since been converted to a chapter 11 proceeding. In November of 1982 the debtor settled the action against Marker whereby the latter deposited a settlement fund of $50,000 in the state court pending the confirmation of the debtor's plan of reorganization.

### II.

On these facts the bankruptcy judge rejected London Grove's complaint seeking relief from the automatic stay. The judge ruled that London Grove did not obtain a valid lien on the settlement fund before Pierson declared bankruptcy, reasoning that Pennsylvania law does not permit garnishment of an unliquidated claim for breach of contract. The bankruptcy judge also concluded that the creation of a settlement fund after the debtor's petition for relief inured to the benefit of the trustee because of the trustee's status as lien creditor, and that the fund could not be attached by London Grove pursuant to its pre-bankruptcy garnishment because of the automatic stay.

### III.

In order for London Grove to succeed in this appeal, it must establish (1) that it possessed a lien not subject to avoidance by the trustee by virtue of the trustee's power under the "strong arm clause" of the Code, and (2) that any act or occurrence needed to perfect its lien after the filing of Pierson's petition was not forbidden by the automatic stay. London Grove advances two theories to support its assertion of a lien in the settlement fund. Primarily Lon-

---

1. Pierson's petition has since been converted to Chapter 11 of the Code.

don Grove argues, as it argued to the bankruptcy judge, that the garnishee had property of the debtor in its possession when the garnishment writ was served in July, 1981. From this premise, London Grove contends that its lien was impressed upon the property so held by Marker & Marker before Pierson's petition for relief, and, indeed, before the preference period antecedent to the onset of bankruptcy.

In its submissions to this court, London Grove advances a second line of argument: Relying on Pennsylvania Rule of Civil Procedure 3111(b),[2] London Grove contends that its garnishment attached property in the hands of Marker & Marker which became owing to Pierson *after* Pierson's Chapter 7 petition was filed—this notwithstanding the possibility that Marker & Marker may have held no property of the debtor at the time garnishment was effected.

In response, Pierson argues that Pennsylvania law does not permit attachment of a lien against an unliquidated claim for breach of contract; · that London Grove obtained no greater rights against Marker & Marker than Pierson had when the attachment was served; and that London Grove's rights were "frozen" when Pierson petitioned for relief because of the automatic stay.

## IV.

■ Section 544(a) of the Bankruptcy Code,[3] aptly termed the "strong arm clause," gives to the trustee, as of the commencement of a case, "the status and powers of a judicial lien creditor, a creditor holding an execution returned unsatisfied, and a bona fide purchaser of real property from the debtor . . . ." 4 *Collier on Bankruptcy* ¶ 544.02 at 544–6—544–7 (15th ed. 1984). Because section 544(a) does not define the roles of a judicial lien creditor, unsatisfied execution creditor, or bona fide purchaser of real property, the content of the trustee's powers under the strong arm clause is derived from applicable nonbankruptcy law—here the law of Pennsylvania. *Id.* at 544–5. The question presented in this case, therefore, is whether London Grove's lien on the settlement fund would be superior, under Pennsylvania law, to the claim of a subsequent lien creditor.

London Grove first argues that a subsequent lien creditor could not overcome its interest in the settlement fund because London Grove had validly attached the debtor's property in the hands of Marker & Marker. In support of this contention, London Grove relies on Pennsylvania Rule of Civil Procedure 3111(b), which provides in part:

Service of the writ [of execution] upon the garnishee shall attach all property of the defendant which may be attached under these rules which is in the possession of the garnishee.

As London Grove further points out, a garnishee is deemed to be in possession of the

**2.** Pa.R.Civ.P. 3111(b) provides:

Service of the writ upon the garnishee shall attach all property of the defendant which may be attached under these rules which is in the possession of the garnishee. It shall also attach all property of the defendant which may be attached under these rules and which comes into the garnishee's possession thereafter until judgment against him even though no such property of the defendant was in his possession at the time of service.

**3.** Section 544(a) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

debtor's property if the garnishee "owes a debt to the defendant," or "has property of the defendant in his custody, possession, or control." Pa.R.Civ.P. 3101(b). That Marker & Marker owed a *debt* to the defendant, London Grove contends, is established by Pierson's complaint against the developer in Pierson's state court lawsuit. That Marker & Marker possessed *property* of the debtor is shown in two ways according to the appellant: At the time of service of London Grove's garnishment, Marker & Marker possessed a voucher in the amount of $39,785.00 which, under Marker & Marker's escrow agreement with Continental Bank, required the bank to disburse for payment the amount of the voucher upon approval by officials of Concord Township and the developer. The voucher was approved by Concord Township, but Marker & Marker refused to approve payment to Pierson. Secondly, London Grove argues that Pierson's claim against Marker & Marker was itself a basis for attachment because the suit for work performed was not so unliquidated or uncertain as to render it exempt from execution.

■ After careful consideration of London Grove's arguments, I conclude that Marker & Marker did not hold property of the debtor within the meaning of Rule 3111(b) at the time the garnishment writ was served. Whether phrased in terms of a "debt" owed by Marker & Marker to Pierson (Rule 3101(b)(1)), or as "property" of Pierson in Marker & Marker's custody, possession or control (Rule 3101(b)(2)), the substance of Pierson's property sought to be attached by London Grove was an unliquidated claim for breach of contract. On the facts of the case before me, I concur with the bankruptcy judge's conclusion that such a claim may not be attached as if it were the debtor's property in the garnishee's hands.

Under long-established precedent of both the Pennsylvania Supreme Court and the Court of Appeals for the Third Circuit, "[t]he general rule ... is that unliquidated claims for tort or breach of contract are not the subject of garnishment." *Eaton v. Pittsburgh Terminal Coal Corporation,* 84 F.2d 364, 365 (3d Cir.1936); *Selheimer v. Elder,* 98 Pa. 154, 158–59 (1881). This rule is in accord with the principle that an attaching creditor obtains no greater right than was vested in the debtor; where the claim of the debtor against the garnishee is undetermined, neither the debtor nor the garnishing creditor can compel payment. *See Folmar v. Shaffer,* 232 Pa.Super.Ct. 22, 25, 332 A.2d 821, 823 (1974); *Meyer v. Pianti,* 109 Pa.Super.Ct. 313, 167 A. 374 (1933).

I recognize, of course, that the rule against garnishment of unliquidated claims is not absolute. In *Girard Fire and Marine Insurance Company v. Field, Merritt & Co.,* 45 Pa. 129 (1863) the Pennsylvania Supreme Court permitted garnishment of an unliquidated claim arising under an insurance policy, stating: "We cannot come to the conclusion that every unliquidated claim is without the reach of the attachment process." 45 Pa. at 133. The Court, nevertheless, restricted its holding to cases in which the amount of recovery could be ascertained by reference to the contract and the market value of the property lost. *Cf. Dunn v. Printing Corporation of America,* 245 F.Supp. 875 (E.D.Pa.1965) (attachment of profits computed at contractual rate of eight percent held valid). The *Girard* Court, moreover, restated the general rule as applied to ordinary tort and contract claims:

> The reason of the exception has sufficient ground to operate on in the exclusion from it of such claims as are contingent, and such as possess no fixed standard for liquidation like torts or damages for breach of contract. These are demands, but not definite enough to be classed as "personal estate," "goods and chattels," and "goods and effects." *They want tangibility, and are not attachable, nor would they be the foundation for the process.*

45 Pa. at 133 (emphasis added).

Particularly instructive is the Pennsylvania Supreme Court's decision in *Selheimer v. Elder, supra.* In that case, the Court

ruled that a claim against a railroad company for entering upon and taking land was not subject to attachment. Distinguishing its *Girard* precedent, the Court found the claim too uncertain and speculative to support attachment. The Court noted that there was no contract between the parties. Furthermore, the Court stated: "Even when the claim arises from a breach of contract it cannot be attached unless the damages can be reduced to certainty by a definite standard; nor where they are speculative or incapable of being ascertained by a fixed standard." *Selheimer*, 98 Pa. at 158, (citation omitted).

In the case at bar, the claim against Marker & Marker could not be established by reference to a fixed standard. Indeed, the garnishee had asserted a substantial counterclaim in defense of Pierson's suit. Pierson's disputed claim, as well as Marker & Marker's counterclaim, occurred in the context of a partially completed construction project. Without litigation to determine the value of work completed by Pierson and the value of the counterclaim resulting from Pierson's alleged breach of the contract, it would be impossible to assign a value to London Grove's asserted lien.

I am not persuaded by London Grove's argument that Marker & Marker held Pierson's property in that Marker & Marker possessed a voucher which, if executed in Pierson's favor, would entitle Pierson to payment. The fact that township authorities had approved the voucher does not, without more, establish that Marker & Marker was liable to Pierson. The voucher required approval by Pierson as well, and Pierson had withheld approval. Similarly, the fact that Marker & Marker had access to funds with which it could satisfy Pier-

son's claim does not establish Marker & Marker's obligation to do so.

In short, I agree with the bankruptcy judge's determination that Marker & Marker did not hold, before the filing of Pierson's petition, property of the debtor subject to garnishment within the meaning of the first sentence of Pa.R.Civ.P. 3111(b). This conclusion does not resolve this appeal, however, for two reasons: First, as the bankruptcy judge recognized, the determination that state law does not permit attachment of Pierson's unliquidated claim is equally applicable to the trustee in his role as hypothetical lien creditor. Section 544(a) affords the trustee no greater rights than a lien creditor would enjoy under state law. Thus, it remains to be determined whether London Grove may rely on post-bankruptcy events to perfect its lien as against the trustee. Second, London Grove's appeal also proceeds on the theory that its lien was valid and perfected from the time the garnishment writ was served even if Marker & Marker held no property of Pierson when the writ was served. I will first address London Grove's claim that state law allows perfection of a lien against property acquired by a garnishee *after* service of the writ. Then, in Part V, I will determine the impact of the automatic stay on the asserted lien.

Although this theory was not specifically addressed to the bankruptcy judge,[4] London Grove argues on this appeal that the after-acquired property clause embodied in the second sentence of Pa.R.Civ.P. 3111(b) allows perfection of a garnishment lien in property obtained by a garnishee after service of the writ. The second sentence of Rule 3111(b) provides that service of a garnishment writ attaches "all property of the defendant which may be attached under these rules and which comes into the gar-

---

**4.** I consider this argument reluctantly because it was not addressed to the bankruptcy judge. Nevertheless, as I have previously stated: "The courts generally will permit parties to put forth new legal issues or interpretations when the factual basis for those contentions is in the record before the bankruptcy judge ...." *In re Brady*, 40 B.R. 244, 248 (E.D.Pa.1984). *See also In the Matter of Walsh Construction, Inc.*, 669

F.2d 1325 (9th Cir.1982); *In re Gilchrist Company*, 410 F.Supp. 1070 (E.D.Pa.1976). This is particularly true where, as here, the parties dispute the legal effect of largely uncontested facts. I must, however, register my concern over the inefficiency and, in some cases, potential unfairness inherent in uncritical application of this rule.

nishee's possession thereafter until judgment against him even though no such property of the defendant was in his possession at the time of service." London Grove argues that, in conjunction with the "first-in-time, first-in-right" priority rule,[5] the after-acquired property clause entitles it to a lien impervious to attack by the trustee.

London Grove's proposed interpretation of Rule 3111(b) would place extraordinary powers in the hands of creditors armed with a writ of garnishment. Taken to its logical conclusion, appellant's position is that Rule 3111(b) enables a creditor presently to secure a prior right to payment from any person who might reasonably be expected to incur a debt to the debtor in the future. Appellant cites no authority for such an expansive reading of Rule 3111(b), and my independent research has disclosed few precedents in London Grove's favor.

I note that some support for London Grove's position can be found in *Sniderman v. Nerone*, 136 Pa.Super.Ct. 381, 7 A.2d 496, *aff'd.* 336 Pa. 305, 9 A.2d 335 (1939) (per curiam). There the court upheld a creditor's garnishment of a debtor/plaintiff's subsequently obtained verdict in a personal injury action. The competing claimants were an assignee of the verdict and a second attaching creditor, both of whom perfected their interests on the day the verdict was entered. In *Sniderman*, however, the pre-judgment garnishment had attached a prior verdict which had been annulled when the defendant obtained a new trial. The court recognized that unliquidated claims for breach of contract ordinarily cannot be attached. The court ruled, however, that the initial verdict was sufficient to permit attachment of property subsequently obtained by the garnishee.

Pierson has uncovered a similar dearth of precedent in its favor. The debtor argues that the Pennsylvania Superior Court's decision in *Caddie Homes, Inc. v. Falic*, 211 Pa.Super.Ct. 333, 235 A.2d 437 (1967), supports a more restricted view of the powers of garnishing creditors. There, the court stated that "the garnishing creditor cannot recover from the garnishee until the debt attached becomes due and payable." 211 Pa.Super.Ct. at 343, 235 A.2d at 442. In *Caddie Homes*, however, a garnishment lien was held properly enforced against *future* earnings of the garnishee.

This lack of dispositive precedent leaves open the question whether Pennsylvania courts would accept the broad view of Rule 3111(b) asserted by London Grove. My inclination is that appellant's expansive interpretation should be rejected, but final resolution of that question of state law can be avoided if the automatic stay precludes attachment of such a lien to a settlement fund created only after the debtor declared bankruptcy. The bankruptcy judge resolved this case on the basis of the automatic stay, thus, I now turn to that inquiry.

## V.

■ The automatic stay, enacted as section 362 of the Code, "provides for a broad stay of liquidation, lien enforcement, and other actions, judicial or otherwise, which would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate." 2 *Collier on Bankruptcy* ¶ 362.01 at 362–6 (15th ed. 1979). In relevant part, section 362 provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

---

5. As Judge Pollak recently held, Pennsylvania determines the priority of competing liens on a "first in time, first in right" basis. *Fidelity Bank v. Commonwealth Marine and General Assurance Company, Ltd.*, 581 F.Supp. 999, 1019 (E.D. Pa.1984). *See also Fidelity Bank v. Commonwealth Marine and General Assurance Company, Ltd.*, 592 F.Supp. 513, 519 (E.D.Pa.1984 (supplemental opinion)); Pa.R.Civ.P. 3137(b) (priority between competing garnishing creditors determined by date of service of respective writs upon garnishee).

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) *any act to create, perfect, or enforce any lien against property of the estate;*

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor. (emphasis added).

Although section 362 admits of various exceptions, the stay has been described as "one of the fundamental protections provided to a debtor by the Code." *In the Matter of M. Frenville Co., Inc.,* 744 F.2d 332 at 334 (3d Cir.1984). The purpose for enactment of section 362 is to enable debtors effectively to reorganize their affairs by providing relief against the immediate demands of unpaid creditors. *Id.*

■ It is clear that the automatic stay applies to London Grove's effort to assert its lien against the settlement fund. London Grove's cause of action against the debtor—indeed its judgment against Pierson—arose pre-petition. *Cf. In the Matter of M. Frenville Co., Inc., supra.* Moreover, the unliquidated claim (since matured into a settlement fund) against which the judgment is sought to be enforced has been property of the estate since Pierson filed for protection. *In re Ryerson,* 739 F.2d 1423 (9th Cir.1984) (right of action for breach of contract belongs to bankruptcy estate). *See also Tignor v. Parkinson,* 729 F.2d 977, 980–81 (4th Cir.1984) (debtor's claim for personal injuries whether unliquidated or settled are property of the estate at commencement of case).

■ The lone remaining issue, then, is what effect application of the automatic stay has on London Grove's assertion of a lien in the post-petition settlement fund. In this respect, I agree with the bankruptcy judge's conclusion that the automatic stay precludes such an attachment. As the bankruptcy judge reasoned, the stay "bars the vesting of a creditor's property interest in property of the estate through the use of a writ of attachment or garnishment." 36 B.R. at 856. *See also* 2 *Collier on Bankruptcy* ¶ 362.04[4] (15th ed. 1979).

Consideration of the process through which London Grove established its lien confirms this conclusion. As described above, appellant claims priority over the trustee based on its garnishment of a cause of action that was unliquidated at the time of garnishment, and that remained so until long after the debtor filed for relief. I am unable to accept London Grove's argument that assertion of such an inchoate right entitles a creditor to post-petition perfection of a lien in property clearly included in the debtor's estate.

Finally, the definition of London Grove's rights as a garnishee by Pennsylvania's substantive law requires affirmance of the bankruptcy judge's order. As discussed in Part IV, London Grove's interest as a garnishing creditor was limited to the value of the debtor's property in the garnishee's hands. Until Marker & Marker agreed to pay $50,000 in settlement of Pierson's

claim, therefore, London Grove held a lien on nothing. Even under appellant's interpretation of state law, then, its lien vested only after Pierson filed for relief. Giving effect to such a lien would contravene the purposes of the automatic stay.

### VI.

I conclude that the automatic stay bars perfection of London Grove's garnishment lien in the settlement fund created after the filing of Pierson's petition for relief. I will therefore affirm the bankruptcy judge's order denying London Grove's complaint for relief from the automatic stay.

### ORDER

This 27th day of November, 1984, it is

ORDERED that the Order of the bankruptcy judge denying the Complaint of London Grove Contractors, Inc., for relief from the automatic stay is AFFIRMED.