## Stewart *v.* Stewart, Appellant, et al.

568

Argued May 3, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas N. Griggs,* for appellant.

*H. F. Stambaugh,* with him *Ralph H. Demmler, Watson & Freeman* and *Bryant & Pittman,* for appellee.

OPINION BY STADTFELD, J., July 15, 1937:

On March 7th, 1936, plaintiff issued a writ of foreign attachment in assumpsit, and summoned Fidelity Trust Company as garnishee. The said writ was served on the garnishee on March 7th, 1936, and returned nihil habet as to the defendant. The garnishee and the defendant, by their respective counsel, both entered appearances de bene esse on March 17th, 1936.

On May 21st, 1936, the plaintiff filed her affidavit of cause of action and statement of claim wherein it appears that the plaintiff is a resident of the State of Florida, and is the wife of the defendant and that the defendant is a non-resident of Pennsylvania. The plaintiff's claim is based upon a decree of Circuit Court of the Eleventh Judicial Circuit of the State of Florida, denying a divorce to the defendant in the attachment proceeding and awarding alimony, in the amount of

$325 per month, and the sum of $4,750 to her for the use and benefit of her solicitors. Plaintiff claims the sum of $775 with interest.

On May 29th, 1936, upon petition of the garnishee, a rule was granted upon plaintiff to show cause why the writ of foreign attachment should not be quashed, or the attachment dissolved. As appears by said petition, the garnishee asserted that the plaintiff had improperly joined causes of action; that the affidavit of cause of action and statement of claim was insufficient in that it failed to disclose that the decree of the Florida court was a final decree, entitled to full faith and credit; and that the greater part of defendant's property in the hands of the garnishee was exempt from his attachment, being the defendant's interest in a spendthrift trust.

On June 29th, 1936, the court, in an opinion by ROWAND, J., refused the petition of the garnishee.

On September 23rd, 1936, upon petition of the defendant, a rule was granted upon the plaintiff to show cause why the writ of foreign attachment should not be quashed or the attachment dissolved, or at least dissolved with respect to the defendant's interest in the spendthrift trust. The averments of the defendant's petition were substantially the same as those in the petition of the garnishee.

On October 17th, 1936, the court discharged the said rule for the reasons set forth in the opinion of the court dated June 29th, 1936.

From the order of the court dismissing the defendant's petition, the defendant appealed to this court under the provisions of the Act of Assembly of April 26, 1917, P. L. 102 (Title 12 P. S. A. Section 1108-1110 inclusive).

The entire record of the proceeding at which the Florida decree of January 3, 1936, was entered is attached as Exhibit "A" to plaintiff's affidavit of cause

of action and statement of claim. The tenth and eleventh paragraphs of the decree, which paragraphs form the principal basis for the cause of action in this case, read as follows: "Tenth: That the plaintiff and cross-defendant, Henry S. A. Stewart, Jr., do pay the defendant and cross-complainant, Bertie Gennett Parkes Stewart, $325 on January 19th, 1936 and $325 on the 19th day of each month thereafter as permanent alimony for maintenance and support, the said payments to be made to the clerk of this court for the use and benefit of the defendant and cross-complainant, Bertie Gennett Parkes Stewart.

"Eleventh: That the plaintiff and cross-defendant, Henry S. A. Stewart, Jr., do pay to the defendant and cross-complainant, Bertie Gennett Parkes Stewart, for the use and benefit of her solicitors Bryant & Pittman, the sum of $4,750 as final counsel fees, said sum being in addition to the temporary fees heretofore allowed by this court; that said money be paid by the plaintiff and cross-defendant, Henry S. A. Stewart, Jr., to the clerk of this court for the defendant and cross-complainant, Bertie Gennett Parkes Stewart, for the use and benefit of her solicitors, Bryant & Pittman, which sum shall be payable as follows: $250 per month, payable at the same time and in a like manner as the alimony payments."

The record as attached to the statement of claim also contains a judgment for unpaid alimony through March 24, 1936, which judgment, after reciting the decree, reads as follows: "It is ordered and adjudged that the defendant and cross-complainant, Bertie Gennett Parkes Stewart, do have and recover of Henry S. A. Stewart, Jr., the plaintiff and cross-defendant, the sum of one thousand three hundred and fifty dollars, lawful money of the United States of America for which let execution issue."

The arrearages due at the time the attachment was

entered, according to plaintiff's affidavit of cause of action and statement of claim amounted to $775.

Appellant in support of his motion to quash or dissolve the attachment specifies two grounds: (a) The plaintiff has improperly joined causes of action in this suit, brought in her own name; and, (b) The affidavit of cause of action and statement of claim are insufficient.

In the petition filed by defendant in the lower court the ground for quashing are as follows: (1)—An alleged improper joinder of a cause of action in plaintiff's own right and one for the use and benefit of her solicitors. (2)—The failure to aver that the Florida decree is final and that the same has not been appealed from, or that the time for filing the appeal has elapsed. (3)—That the record shows that the Florida court reserved jurisdiction for the purpose of settling future questions involving alimony and suit moneys and therefore that the decree is not final and not entitled to full faith and credit. (4)—The record fails to set forth that the Florida court is without power to alter, vary or modify the decree. (5)—Failure to aver that the Florida court has liquidated or reduced to judgment any sums claimed under its decree.

We do not believe that there is any misjoinder of actions. Both the original decree covering alimony and counsel fees, as also the judgment entered by the court on March 24, 1936, covering judgment for arrearages, order and direct that the respective sums "be paid by the said plaintiff and cross-defendant, Henry S. A. Stewart, Jr., to the defendant and cross-complainant, Bertie Gennet Parkes Stewart."

The court in Florida has followed the practice of the Pennsylvania courts, in decreeing a certain sum to the wife for alimony and a certain other sum for counsel fees. Both sums are payable to the wife. There is no joinder of causes of action of two separate plaintiffs.

Under our practice, the wife and not the attorney is the proper party to proceed for the failure to pay counsel fees. The right of a wife to require her husband to pay her counsel fees is no more a representative right than her right to compel her husband to give her money to pay her living expenses.

As to the alleged failure to aver that the decree of the Florida court, dated January 3, 1936, is a final decree which has not been appealed from, or to aver that the time for filing an appeal has elapsed:—The decree in question, as shown by the exemplification of the same attached to and made part of the statement of claim, is, on its face, *a final decree,* and it is so stated. It is so referred to by the defendant, Henry S. A. Stewart, Jr., in his petition filed for a reduction of alimony. On March 24, 1936, the court in entering the order denying Henry S. A. Stewart, Jr.'s petition for reduction, refers to the "Final Decree heretofore entered herein dated January 3, 1936."

The certificate of the Clerk of Courts of Dade County, Florida, properly verified under the Act of Congress, certifies that the record attached is a correct and complete copy of all the orders entered by the court, and lists among those orders "final decree, filed January 3, 1936" and the judgment filed March 24, 1936. It also lists the pleadings on file, none of which discloses the existence of an appeal.

But even if an appeal had been taken from the original decree, unless there also had been a stay of proceedings, it would not bar an action thereon in another state pending the appeal. See *Merchants' Insurance Co. v. De Wolf et al.,* 33 Pa. 45; *German Trust Co. of Davenport v. Plotke,* 274 Pa. 483, 118 A. 508. In the case last cited an action was brought on a foreign judgment. The affidavit of defense alleged an appeal had been taken from the judgment but did not allege a modification. The Supreme Court affirmed an

order making absolute a rule for judgment for want of a sufficient affidavit of defense. Quoting from the opinion of the lower court in said case: "The affidavit alleges that an appeal was taken to the judgment of the New Jersey court; but there is no averment that the judgment was modified or reversed, that the appeal acted to stay proceedings or that it affected the validity of the judgment, which is not subject to attack in this jurisdiction.

"The judgment entered in New Jersey was rendered by a court of competent jurisdiction. It must receive full faith and credit as to all matters in controversy, and which, with proper diligence, might have been interposed as a defense in the original action: *Hunt v. Snyder*, 261 Pa. 257 (104 A. 603).

"The affidavit of defense filed in this case is insufficient to prevent the entry of judgment."

The Supreme Court affirmed per curiam.

On reargument, the court vacated the judgment because the Supreme Court of New Jersey had reversed the judgment sued upon and remanded the case for further proceedings, and the Pennsylvania Supreme Court remitted the record to the court below to stay proceedings until a counter-claim could be disposed of in the New Jersey courts.

In *Christian v. Bennett*, 317 Pa. 23, 175 A. 494, the Supreme Court reversed an order of the Allegheny County Common Pleas Court, quashing an attachment. The judgment on which the action was brought was a West Virginia judgment. We quote from the opinion: "...... 'It is therefore adjudged and ordered by the court that the plaintiff James A. Paisley do recover of and from the defendant S. A. Williams the sum of $8,500, with interest thereon from this date until paid, and costs. The foregoing judgment order is subject to the agreement of September 4, 1930, between said

James A. Paisley and said S. A. Williams, pending which enforcement of said order shall be stayed.' "

The Supreme Court in its opinion thus outlines the law and facts (24-25): "...... The court quashed the writ on the ground that 'no judgment unliquidated in amount and conditional in its terms can support a foreign attachment.' The order appealed from must be reversed. The West Virginia judgment was liquidated and unconditional, although execution was stayed, and full faith and credit must be given to it: Article IV, section I, of the Federal Constitution, 28 USCA, section 687; *Roche v. McDonald,* 275 U. S. 449.

"Foreign attachment lies 'in all actions *ex contractu'* (Act of June 13, 1836, P. L. 568, section 44, and supplements, 12 PS, section 2891), and compels appearance by the non-resident defendant (*Clauss v. Ainey,* 279 Pa. 534, 536, 124 A. 183; *Kennedy v. Schleindl.* 290 Pa. 38, 137 A. 815), or subjects his property to the procedure prescribed in the statute in default of appearance. A judgment obtained in a court of another state is within the statute; *German Trust Co. of Davenport v. Plotke,* 274 Pa. 483, 118 A. 508. In considering the motion to quash, the exemplification of the West Virginia record must be regarded as conclusive that the defendant is bound to pay to the plaintiff $8,500 with interest and costs; *Bigelow v. Old Dominion Copper Co.,* 225 U. S. 111, 133. On a proper showing, therefore, the plaintiff is entitled to similar judgment in this State; the stay of execution is no bar to his right to such adjudication. The court in which a judgment is entered may, in the exercise of its equitable power, retain control of the execution: *Davis v. Davis,* 46 Pa. Superior Ct. 358; *Lewis v. Linton,* 204 Pa. 234, 53 A. 999. 'The judgment of a court "may be complete and perfect and have full effect independent of the right to issue execution" ': *Michigan Trust Co. v. Ferry,* 228 U. S. 346, 356.

" . . . . . . As there was no defect in the record rendering the proceeding fundamentally irregular and void, it was error to quash the writ: *Pasquinelli v. Southern Macaroni Mfg. Co.*, 272 Pa. 468, 478, 116 A. 372."

The faith and credit to which a judgment is entitled is the faith and credit, validity and effect which it has in the State where it was rendered. Quoting from the opinion of the Supreme Court of the United States in *Roche v. McDonald*, 275 U. S. 449 at 451-452: "It is settled by repeated decisions of this court that the full faith and credit clause of the Constitution requires that the judgment of a State court which had jurisdiction of the parties and the subject-matter in suit, shall be given in the courts of every other state the same credit, validity and effect which it has in the state where it was rendered, and be equally conclusive upon the merits: and that only such defenses as would be good to a suit thereon in that State can be relied on in the courts of any other State . . . . . . "

The reservation of jurisdiction for the purpose of settling future questions in reference to alimony and suit moneys does not change the character of the decree as a final decree. The reservation of jurisdiction is for one purpose only, namely, "for the purpose of settling any *future* questions involving the same" (alimony and suit moneys).

In *Pace v. Pace*, 99 Fla. 859, the Florida court held that independent of statute there was no power to modify a final decree for alimony except by recognized process of equity, and the court said (p. 860): " . . . . . . After the lapse of time as thus provided by rule, and statute *final decrees cannot be changed, added to, nor taken from, except as to the correction, nunc pro tunc of mere clerical errors or misprisions, without resorting to the recognized processes of equity, based upon appropriate grounds. Mabson v. Christ*, 96 Fla. 756, 119 So. R. 131.

"It is certain that the final decree cannot be reached and corrected on motion for rehearing because of the rule announced in *Mabson v. Christ,* supra, but we think the bill to correct and modify the final decree may be treated *as a bill of review* ......"

The Florida statute providing for the modification of alimony decrees is a statute to modify *prospectively.* See the Act of June 1, 1935, Session Laws of 1935, Ch. 16780, page 53, Sec. 1, material portions of which read as follows: "Whenever any husband and wife heretofore, or hereafter, ...... (the omitted portion covers agreements) ...... or whenever any husband has pursuant to the decree of any court of competent jurisdiction been required to make to his wife any such payments, and the circumstances ...... of the husband shall have changed since the ...... rendition of such decree, either party may apply to the Circuit Court ...... for an order and judgment decreasing or increasing the amount of such separate support, maintenance or alimony, and the Court ...... shall make such order and judgment as justice and equity shall require, with due regard to the changed circumstances and the financial ability of the husband, decreasing or increasing or confirming the amount of separate support, maintenance or alimony provided for in such ...... decree, and *thereafter* the husband shall pay and be liable to pay the amount of separate support, maintenance or alimony directed in such order and judgment, and no other or further amount ......"

Furthermore, as to the unpaid installments, the Florida Court has definitely refused any modification of its final decree.

On March 24, 1936, the Florida Court entered an order confirming the final decree and denying a petition for reduction and entered a judgment on the same day for arrearages under the final decree.

This question has been specifically ruled upon by the

Supreme Court of the United States in the case of —*Sistare v. Sistare*, 218 U. S. 1, which held that where the court which originally entered judgment for alimony still retains jurisdiction to modify or cancel the award, there can nevertheless be an action brought in another state on such a judgment or decree, and in such second action the plaintiff has an absolute right to have the first judgment or decree accorded full faith and credit as to such sums as were due at the time the second action was brought. In that case the decree sued upon in Connecticut was a New York decree to the effect that defendant— "...... pay to the plaintiff ...... for her maintenance and support and the maintenance and support of ...... the minor child of the plaintiff and defendant, the sum of $22.50 per week, such sum to be paid into the hands of her attorney of record in this action on each and every Monday."

In reversing a judgment of the Supreme Court of Connecticut, which had refused to accord the New York decree full faith and credit, the Supreme Court said, per Mr. Justice WHITE, the following: "First, that, generally speaking, *where a decree is rendered for alimony and is made payable in future installments the right to such installments becomes absolute and vested, upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments.* Since as declared in the Barber case, 'alimony decreed to a wife in a divorce or separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is' ......" (16-17).

"But it is equally certain that nothing in this language expressly gives power to revoke or modify an installment of alimony which had accrued prior to the making of an application to vary or modify, and every reasonable implication must be resorted to against the

existence of such power in the absence of clear language manifesting an intention to confer it. The implication, however, which arises from the failure to expressly confer authority to retroactively modify an allowance of alimony is fortified by the provisions which are expressed. Thus the methods of enforcing payment of future alimony awarded provided by the statute, all contemplate the collection and paying over as a matter of right of the installments as they accrue as long as the judgment remains unmodified, or at least until application has been made or permission to make one in pursuance to the statute has been accorded."

"...... We think it becomes quite clear that the mere enlargement of the power of the court so as to permit modification of the allowance for alimony upon the application of the husband did not confer the authority to change or set aside the rights of the wife in respect to installments which were overdue at the time application was made by the husband to modify the decree." To same effect see *Barber v. Barber,* 21 How. 582.

As the Florida court has already refused to modify its decree, and as to such installments as are embraced in the present action and sought to be recovered through the present attachment, the record itself is a sufficient averment of the finality of the plaintiff's judicially established right to the accrued installments.

The fact that the judgment of March 24 was entered after the attachment does not prevent the plaintiff relying upon the same in its affidavit of cause of action or statement of claim, at least to the extent of what moneys were due on March 7th, the date the attachment issued. The judgment is a mere liquidation of overdue installments for the purpose of giving a right to issue execution: *Dickenson v. Sharpe,* 94 Fla. 25; 113 So. 638.

There is no reason to quash or dissolve the writ of

foreign attachment in whole or in part, with relation to defendant's interest in the spendthrift trust created for him.

The spendthrift trust was created by deed of trust dated October 21, 1921, made by defendant's father.

Defendant also has an interest in a testamentary trust under his father's will, the right to attach which defendant does not deny. It has no spendthrift provision.

The questions involved in relation to the liability of spendthrift trusts for the support of the wife have been fully discussed and considered in *Moorehead's Estate,* 289 Pa. 542, 137 A. 802, and *Thomas v. Thomas,* 112 Pa. Superior Ct. 578, 172 A. 36. It has been squarely held in a recent opinion by Judge GORDON, of Philadelphia, that such a spendthrift trust is, independent of any statute, subject to a writ of foreign attachment at the suit of a non-resident wife. See *Lippincott v. Lippincott,* 28 D. & C. 28. The following portions of the opinion of Judge GORDON are material: "This is a motion by the garnishee to quash a writ of foreign attachment on the ground that the affidavit of cause of action and statement of claim fail to show any property of defendant in the hands of the garnishee which is subject to attachment. Plaintiff is a resident of California, and is the wife of defendant, who is also a resident of that State. The suit is brought by plaintiff to recover arrearages of $1,855 due from defendant upon two judgments, in the nature of orders of support, which she has secured against her husband in the courts of California, and the property which plaintiff seeks to attach consists of an income of approximately $150 a month from a spendthrift trust, established by defendant's mother, and in which he is the beneficiary and the garnishee is the trustee. The spendthrift clause of the trust provides that 'so far as may be permissible in law' the income and principal of the

trust 'shall not be in any way or manner subject or liable to......anticipation, sale, pledge, debts, contracts, engagements or liabilities, and shall not be subject or liable to attachment or sequestration under any legal or equitable or other process.' "

The court reviews the contention that the case is governed by the case of *Everhart v. Everhart,* 87 Pa. Superior Ct. 184, and then proceeds to discuss *Moorehead's Estate,* 289 Pa. 542, 137 A. 802; *Thomas v. Thomas,* 112 Pa. Superior Ct. 578, 172 A. 36, and concludes as follows (3132) : "The foregoing decisions of our appellate courts have finally settled the modern law of Pennsylvania upon the subject under consideration, and spendthrift trusts are now definitely determined to be void and against public policy as to the claims of wives and children. The garnishee argues, however, that, since the plaintiff wives in *Moorehead's Estate,* supra, and *Thomas v. Thomas et al.,* supra, were residents of Pennsylvania, while the wife in the Everhart case, which denied access by foreign attachment to a spendthrift trust, was a non-resident, the exact point here raised has never been decided, that the latter case governs the one before us, and that such trusts are still valid in Pennsylvania as to non-resident wives. The difficulty with this argument lies in the fact that, in the Everhart case, plaintiff invoked the Act of 1921, and that the decision was, therefore, confined to an interpretation of that act. In the two later cases, however, the remedial Act of 1921 was ignored, and it was held that, independent of that act, such trusts are void as to wives and children, and that they can resort to any apt form of action to assert and secure their rights. The Everhart case dealt with a matter of remedy only, whereas the other cases dealt with the substantive law governing spendthrift trusts.

"This being so, we think it follows in this jurisdiction that a non-resident, as well as a resident, wife can

reach her husband's interest in a spendthrift trust. If, as now settled, such a trust is void as against the claims of a wife, it would be a narrow conception indeed of the public policy which denounces it as immoral to hold that the mere residence of the wife can remove the taint in the instrument. A wife's right to support exists wherever she may reside, and decisions, some of which protect the fundamental rights of wives, while others, by denying them, assist husbands in refusing or neglecting to perform their correlative fundamental duties, cannot be reconciled either in reason or good morals upon any such irrelevant basis as that of residence.

"For the foregoing reasons, we think that plaintiff can reach the spendthrift trust of which her husband is the beneficiary in this action......" These questions and the alleged assignments by defendant prior to the attachment, as set forth in defendant's petition to quash or dissolve the attachment, may all be disposed of, either at the trial or on the answers to interrogatories.

As Judge ROWAND of the lower court said in his opinion (68a) : "......The liability of the funds involved, as we view them, cannot successfully be raised in this proceeding.

"As we review this record there are no defects rendering the proceeding fundamentally irregular and void and we cannot grant the petition to quash the writ or to dissolve it in part. The right to attach the spendthrift trust, as set forth in the petition, can be properly raised and passed upon either at the trial or on the answer to interrogatories, which will no doubt later become a matter of record in these proceedings."

Appellant has shown no defect in the record which renders the proceeding fundamentally irregular and void so as to entitle him to have the writ quashed. Appellee having shown a proper cause of action, there is

no ground for a dissolution of the attachment. An averment of some defense on the merits is not enough.

As stated by Chief Justice MOSCHZISKER in the case of *Pasquinelli v. Southern Macaroni Mfg. Co.*, 272 Pa., 468, at 477, 116 A. 372: "An applicant to quash a writ may not aver simply a defense on the merits, or a good legal answer to the alleged debt itself, he must point to some defect in the record which renders the proceeding fundamentally irregular and void (*Crawford v. Stewart*, 38 Pa. 34, 36; *Steel v. Goodwin*, 113 Pa. 288, 292) [6 A. 49], or if (as in exceptional instances is allowed) evidence dehors the record is produced to establish defects therein, the defects depended on must be of a character to put plaintiff completely out of court ......"

The motion to dissolve attachment is designed primarily to take advantage of a failure to present a cause of action in the affidavit. See *Mindlin v. Saxony Spinning Co.*, 261 Pa. 354, 104 A. 598, and *Pasquinelli v. Southern Macaroni Mfg. Co.*, 272 Pa. 468, at 476 and 477, 116 A. 372, where former Chief Justice MOSCHZISKER said: "......It is sufficient to say that the broad, or general, distinction is this: Where, notwithstanding the defects pointed out, the suit may remain, as a pending action, a motion to dissolve is correct practice; on the other hand, where the defects depended on are fundamental in character and such as to put plaintiff completely out of court, a motion to quash the writ is proper. To particularize: where security is entered under section 62 of the Act of June 13, 1836, P. L. (1835-36) 572, 583, the motion to dissolve is right, for the statute so ordains; the only other instances where the motion should be interposed are where one who wants relief desires to take advantage of defects in the statement of cause of action, or in the case thereby shown, which are not of such a funda-

mental nature as to sustain a motion to quash the writ ......"

We see no error in the action of the lower court.

The assignment of error is overruled and the order of the lower court is affirmed.