## Colton v. Colton

*Arthur M. Eastburn, Jr.,* for plaintiff.
*John S. Renninger,* for defendant.

BIESTER, P. J., October 14, 1960.—The above divorce action was instituted by the husband-plaintiff on October 15, 1957. Following service by publication a master was appointed on January 18, 1958. On January 24, 1958 Eugene R. Lippman, Esq., a member of this bar filed a warrant of attorney on behalf of defendant. On February 21, 1958, a rule was granted upon plaintiff to show cause why he should not pay defendant alimony pendente lite, counsel fees and expenses, to which plaintiff filed an answer on March 1, 1958. Hearings on the merits were held on June 17

and 18, 1958, Mr. Lippman representing defendant thereat. On July 14, 1958, Mr. Lippman presented a petition to the court seeking our approval of his withdrawing as counsel, alleging lack of cooperation on the part of defendant, in that she refused to accept his advice or assist him in the preparation of the defense. The rule granted on this petition was made absolute and Mr. Lippman withdrew from the case. For this, or other reasons not disclosed by the record, the petition for alimony pendente lite was not promptly pursued by defendant. On April 16, 1959, present counsel filed an appearance and warrant of attorney. Depositions in support of and opposed to the petition for alimony pendente lite, etc., were taken on October 20, 1959, December 1, 1959, December 14, 1959 and January 14, 1960. The proceedings are stayed pending the disposition of the petition.

Plaintiff, in seeking this divorce, alleges that his wife has been guilty of adultery on many occasions with a number of men. It is the position of plaintiff that we should conclude from reading the notes of testimony in the divorce action itself and the depositions in the present proceeding, that defendant is guilty of adultery and for this reason should be barred from an allowance of alimony pendente lite. It is true that a number of lower court cases, most of them decided some years ago, support this proposition, notably the dictum appearing in Stock v. Stock, 11 Phila. 324, frequently relied upon in later decisions. However, as Mr. Freedman points out in his work on Marriage and Divorce, vol. 2, sec. 443:

"The difficulty with the rule is that if alimony should be refused because the wife is living in adultery, or because she has committed isolated acts of adultery, it is difficult to see why it should not be refused for any other matrimonial offense absolving the husband from the duty of supporting his wife. In-

deed, this is the logical consequence of the doctrine".

True it is that adultery may be considered the gravest of all matrimonial transgressions and the greatest of all indignities, but this would not appear to justify its being placed in a different category than other causes of divorce in considering the right to alimony pendente lite. On the contrary, the adjudication in limine of such a cause of divorce would, it appears to us, be more an affront to justice than if lesser grounds were alleged. It is our view that a wife charged with adultery should be afforded every opportunity to defend against this charge. Unfortunately, we have found no appellate court cases which clearly adopt this view. Hanson v. Hanson, 177 Pa. Superior Ct. 384, was cited at argument, but cannot be said to be controlling. In that case the adultery testified to occurred subsequent to the accrual of the grounds of divorce and, therefore, even if proved, would not constitute a defense to the divorce action. See Clark v. Clark, 160 Pa. Superior Ct. 562; Bock v. Bock, 162 Pa. Superior Ct. 506. Under these circumstances the Hanson case holds that the lower court's award of alimony pendente lite *was not an abuse of discretion*. Brady v. Brady, 168 Pa. Superior Ct. 538, however, is cited with approval, the causes there being desertion and bigamy. It was there said (page 539):

". . . Patently if the court below had refused appellee's petition it would have adjudicated in limine the validity of the divorce and also the merits of the substantive grounds for divorce alleged in the complaint. It would be a harsh rule which denied appellee the means of establishing her rights until she had first fully proved them."

It is our conclusion that we should not decide at this stage of the proceedings whether defendant has been guilty of adultery.

The husband in the case before us has a very substantial income and is possessed of capital assets of considerable value. The depositions reveal that his taxable income for 1956 was $24,919, less $5,147.50 for farm loss. In 1957 his taxable income was $20,-627.84, the amount of the farm loss being unrevealed in the depositions. In 1958 his taxable income was $28,477, less farm losses of $9,044.24. His income is derived from his salary as vice president of an enterprise known as Wallace Hy-Cross Hatcheries, Inc., dividends and interest. His net worth is in excess of $350,000. The scale of living which the parties enjoyed, while residing together, was consistent with plaintiff's financial situation.

Defendant itemized items of expenses, indicating that her needs require a payment to her of approximately $465 a month, including an allowance for clothing in the amount of $2,000 a year. At the time the depositions were taken, she stated that she was employed and earned $51 a week but refused to divulge where she was working or where she was living. She stated that she had received bills for counsel fees and expenses from counsel in New York in the amount of $3,067.38; from an attorney in the adjoining county of Montgomery, who evidently forwarded the case to local counsel, in the amount of $5,007.45, and from Mr. Lippman, local counsel, in the amount of $750. In addition, she stated she is indebted to various creditors totalling several thousand dollars.

In determining the right to alimony pendente lite and the amount thereof, we should take into consideration the wife's necessity, the husband's ability to pay and the character, situation and surroundings of the parties and the scale of living to which they have been accustomed: Gangloff v. Gangloff, 163 Pa. Superior Ct. 570, 572; Rothman v. Rothman, 180 Pa. Superior Ct. 421. The application of the controlling

elements affords us great difficulty in the present situation by reason of the rather peculiar circumstances of the case. That defendant has been an inebriate for many years is scarcely open to question. She has been committed at least eight times for treatment of this condition. Although she testified she feels she is now in control of this situation, we cannot help but have some reservations, for her addiction to alcohol has continued intermittently since 1951 until she left her husband in January 1957, apparently because she anticipated she would be recommitted.

Another factor to be given consideration involves the obstructionist tactics of defendant, which we referred to at some length in an opinion heretofore filed arising out of a petition presented on behalf of defendant on June 5, 1959, to strike the testimony taken at a hearing of April 11, 1959.

The factual situation regarding the presence of these tactics is set forth in that opinion as follows:

"By reason of the withdrawal of such counsel (Lippman) the hearing scheduled for July 14, 1958, was adjourned until August 11, 1958. On that date the defendant still being without local counsel, a hearing was re-scheduled for August 20, 1958, at which time it was again adjourned because of the failure of the defendant to procure counsel.

"On January 9, 1959, counsel for the plaintiff presented a petition to the Court seeking our authority to proceed with the taking of testimony if the defendant failed to procure counsel within twenty days. Service of this notice was made upon Frederick B. Smillie, Esq., a member of the Bar of the adjacent County of Montgomery and upon one Sidney Liebowitz, Esq., of New York, who were said to represent the defendant. The petition alleges that on or about November 1, 1958, counsel for the plaintiff was advised by one Ward F. Clark, Esq., a member of this Bar,

that he represented the defendant, but Mr. Clark withdrew his informal representation on, or about, December 1, 1958. Subsequent to the filing of the petition, on or about January 23, 1959, one Isaac S. Garb, Esq., a member of this Bar, advised counsel for the plaintiff that he represented the defendant, but the depositions reveal that the defendant refused to execute a warrant of attorney authorizing Mr. Garb to represent her. On March 5, 1959, the court authorized the Master to proceed with the taking of testimony.

"The hearing was then fixed for April 11, 1959, notice thereof being given to Mr. Smillie and Mr. Liebowitz. It was impossible to give direct notice to the defendant as her whereabouts were unknown to the Master, or to counsel for the plaintiff."

As therein adverted to, defendant has continuously refused to reveal where she is living or where she is working, thus beclouding circumstances which we feel may be taken into consideration in fixing the amount of the alimony. The factor of delay and the reason therefor is also a properly considered element in determining the date from which the alimony should run, for the order for alimony should not cover a period of prolonged litigation, where delays are occasioned by the wife's dilatory tactics. See Wargo v. Wargo, 190 Pa. Superior Ct. 356, 359; Koehler v. Koehler (No. 1), 73 Pa. Superior Ct. 41. Taking all of the factors into consideration, we have concluded that the order should be effective as of October 20, 1959, the first date on which depositions were taken in support of the present petition, and that the amount should be $50 a week.

As to the counsel fees, we should give consideration to the value of counsel's service, the wife's necessities, the husband's ability to pay and the character, situation and surroundings of the parties: Rothman v.

Rothman, supra. That is to say, the factors to be taken into consideration are of the same nature as those considered in awarding alimony, with the additional factor of the value of counsel's service.

In the present case, Mr. Lippman, as local counsel in the earlier stages of this proceeding, attended two rather lengthy hearings and amply protected the defendant's case in cross-examining witnesses. Defendant is presently represented by John Renninger, Esq., a member of this bar, and William L. O'Hey, Esq., a member of the bar of adjoining Montgomery County. They were required to review the notes of testimony of prior hearings, interview their client in order to prepare their case, attend the taking of depositions on four occasions in connection with the matter now before us and attended one hearing on the merits. They have submitted a brief in support of their position in the matter before us and argued before the court en banc. They also filed, as hereinbefore adverted to, a petition to strike the testimony at a hearing held before the filing of Mr. Renninger's appearance, but their contention was deemed to be without merit. Precisely what functions were performed by counsel from New York and prior counsel from Montgomery County to, in any wise, justify the fees for which bills were submitted is unrevealed by the record, although New York counsel appears to have attended two hearings with Mr. Lippman, during which he took no active part.

We do not deem it to be within our province to allocate counsel fees amongst various counsel, but, nevertheless, cannot be unmindful of the fact services were performed prior to the present representation. In making the following order we are also cognizant of the expression of the court in Stewart v. Stewart, 127 Pa. Superior Ct. 567, 573, to the effect that "The right of a wife to require her husband to pay her counsel

fees is no more a representative right than her right to compel her husband to give her money to pay her living expenses."

The history of this case, however, is such that we believe counsel should be protected and that it would be unrealistic to award the counsel fees to defendant. We therefore make the following

### Order

And now, to wit, October 14, 1960, the court orders and directs that Ralph L. Colton, Jr., plaintiff, pay to his wife, Keith G. Colton, defendant, the sum of $50 per week for alimony pendente lite, beginning as of October 20, 1959, such payments to continue until the divorce action is concluded, and further, providing that defendant cooperate in bringing about a reasonably prompt conclusion to the action; plaintiff shall also pay to the wife the sum of $100 on account of expenses incurred; that he pay to Eugene R. Lippman, Esq., the sum of $750 as counsel fees, and to John Renninger, Esq., the sum of $1,000 on account of counsel fees, with leave, however, to Mr. Renninger to present an additional petition for counsel fees at the termination of these proceedings.