Caddie Homes, Inc. *v.* Falic (et al., Appellant).

334

Argued September 14, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Harry A. Short, Jr.*, with him *Liebert, Harvey, Bechtle, Herting & Short*, for appellant.

*Ragan A. Henry*, with him *Gerald Gornish*, and *Goodis, Greenfield, Narin & Mann*, for appellee.

OPINION BY HOFFMAN, J., November 16, 1967:

Caddie Homes Ellicott, Inc. a wholly-owned Maryland subsidiary of Caddie Homes, Inc., a Pennsylvania corporation (both of which are appellees herein and referred to collectively as "Caddie Homes"), had employed defendant Fima Falic ("Falic"), as a commission salesman. Falic, a resident of Maryland, was employed by Caddie Homes in that State. Between November 1, 1962 and June 12, 1964, Caddie Homes advanced $10,085.29 to Falic. Part of this money had been advanced to assist Falic after he had been injured in an automobile accident. Falic agreed in writing in

1963 and 1964 to repay the loans when certain sums became payable to him by insurance companies because of the accident.

On June 19, 1965, the Maryland Workmen's Compensation Commission awarded Falic a sum not in excess of $10,000.00. Falic was to receive an initial sum of $2,000.00 and the balance in weekly installments. Payments were to be made by Caddie Homes' insurance carrier, Employers Group of Insurance Companies (Employers). Although Caddie Homes demanded payment, Falic refused to return the money advanced to him. Consequently, on July 8, 1965, Caddie Homes instituted this action in foreign attachment in Pennsylvania, summoning Employers as garnishee. The writ of foreign attachment purported to attach: "All insurance benefits, obligations, sums, payments, amounts due or to become due to and all other property real or personal of defendant."

Despite the attachment, however, Employers continued to pay Falic a series of weekly payments until December 1965, when it paid a final large sum in full settlement of Falic's claim. This final payment was made pursuant to an order of the Maryland Workmen's Compensation Commission, upon the petition of Falic to convert the weekly award into a lump sum payment. At no time did Employers advise the Maryland Workmen's Compensation Commission of the attachment. Moreover, it did not advise Caddie Homes that it was continuing to make payments after the attachment was served.

The only action taken by Employers was to file preliminary objections alleging that our courts are without jurisdiction, because the money paid was exempt from attachment and because there was no "property" or "debt" within the meaning of the Pennsylvania Rules of Civil Procedure. After argument, the lower court dismissed the preliminary objections.

In analyzing this case, the basic rules and statutes to which the parties refer must be set out. Pa. R. C. P. No. 1252, provides in pertinent part:

"A foreign attachment may be issued to attach property of a defendant *not exempt from execution* . . . when

(1) the defendant is an individual who is a nonresident of the Commonwealth. . ." [Emphasis added]

Pa. R. C. P. No. 1253 provides in pertinent part:

"Any person may be made a garnishee and shall be deemed to have possession of property of the defendant if he

(1) owes a debt to the defendant;

(2) has property of the defendant in his custody, possession or control; . . ."

In the instant action, all parties agree that defendant Falic was a nonresident of the Commonwealth of Pennsylvania. Employers contends, however, that the attachment failed to comply with Pa. R. C. P. No. 1252 because the funds attached were, in fact, exempt from execution under the Maryland Workmen's Compensation Act which provides: "No money payable under this article shall prior to issuance and delivery of the warrant and voucher thereof, be capable of being assigned, charged or taken in execution or attachment." [Article 101, §50]. Employers would have us hold, therefore, that the Full Faith and Credit Clause of the Federal Constitution requires that we give effect to this Maryland statute exempting workmen's compensation benefits from attachment, since there is no contrary public policy in our forum.

Assuming that the Maryland statute does exempt such funds from attachment, we cannot agree that we are required to adhere to it in this case.

First, it has long been the general rule in Pennsylvania and elsewhere that the laws of attachment and exemption are governed by the law of the forum, not

the law of the state where the debt arose. The applicability of this doctrine, insofar as it has affected Pennsylvania residents, may best be demonstrated by reference to two older cases.

In *Bolton v. Pennsylvania Company,* 88 Pa. 261 (1879), the Supreme Court of Pennsylvania held that wages earned by and due a citizen of Pennsylvania, where such wages are exempt from attachment, may, nevertheless, be attached in another state, where no law exists prohibiting the attachment of wages. Similarly, in *Morgan v. Neville,* 74 Pa. 52 (1873), the Supreme Court held that a Maryland court properly did not apply the Pennsylvania act exempting wages from attachment, but that the Maryland remedy applied, even though all parties resided in Pennsylvania and the contract was executed and work performed there. See also *Commonwealth ex rel. Bolen v. Bolen,* 167 Pa. Superior Ct. 168, 74 A. 2d 542 (1950); *Birl v. Birl,* 24 Pa. D. & C. 2d 421 (1961).

Moreover, the Supreme Court of the United States has held that the forum's reference to its own exemption statute does not subvert the Full Faith and Credit Clause of the Constitution. In *Sanders v. Armour Fertilizer Works,* 292 U.S. 190 (1934), a fire insurance company owed money to an insured, a resident of Texas, whose homestead property in that State had burned. Under Texas statutes, proceeds of fire insurance appertaining to a homestead were exempt from execution. The insurance company, however, was garnisheed in Illinois on a debt of the insured in that state. The insured claimed that the property was exempt under the Texas exemption statutes. Nonetheless, the Supreme Court held that the exemption extended by Texas to these proceeds need not be recognized by Illinois when the insured is sued there on a debt and the insurance money is attached by a gar-

nishment served on the insurance company. Thus, it rejected the appellant's claims of full faith and credit.

Similarly, in *Clark v. Williard,* 294 U.S. 211 (1935), Mr. Justice CARDOZO, speaking for the Court, recognized that: "Every State has jurisdiction to determine for itself the liability of property within its territorial limits to seizure and sale under the process of its courts. . . . In this there is no denial to the statutes of Iowa [the residence of the debtor] or to its judicial proceedings of the faith and credit owing to them under the Constitution of the United States." (p. 213) See also *Chicago R. I. & Pac. Ry. v. Sturm,* 174 U.S. 710 (1899); Restatement, Conflict of Laws, §600 (1934); Ehrenzweig, Conflict of Laws, §125, p. 358 (1962); Currie and Schreter, Unconstitutional Discrimination in the Conflict of Laws and Equal Protection, 28 U. Chi. L. Rev. 1, 18-29 (1960).

Finally, it is incorrect to suggest that the allowance of this attachment is contrary to our Commonwealth's public policy. Section 621 of our Workmen's Compensation Act, 77 P.S. §318, it is true, specifically, provides that, "Claims for payments due under this article of this act and compensation payments made by virtue thereof shall not be assignable, and (*except as provided in section three hundred and nineteen of article three* and section five hundred and one of article five hereof) shall be exempt from all claims of creditors, and from levy, execution, or attachment, which exemption may not be waived." The exception to which §621 specifically refers provides: "Where an employe has received payments for the disability or medical expense resulting from an injury by accident in the course of his employment, paid by the employer, or an insurance company on the basis that the injury and disability were not compensable under this act, in the event of an agreement or award for that injury, the employer or insurance company, who made the payments,

shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board." The Pennsylvania Workmen's Compensation Act, §319, 77 P.S. §671.

Thus, our legislature has clearly indicated that under certain circumstances, our Commonwealth favors the attachment of workmen's compensation benefits by employers. In particular it has recognized the advisability of allowing such attachment by employers who have advanced money to their employees for disability or medical payments.[1] In summary, therefore, there is no constitutional compulsion upon us to grant full faith and credit to exemptions created under the Maryland statute, nor is the attachment in this case contrary to our public policy.

Determining that we are not constitutionally bound to give full faith and credit to the Maryland statute, however, does not foreclose our analysis of this problem. It, nonetheless, remains incumbent upon us to determine whether we should, as a matter of comity, adopt and apply the Maryland exemption statute in this case. It is within our discretion to determine whether public policy and sound judicial procedure suggest that we defer to the Maryland workmen's compensation statute in its entirety.

The Supreme Court has passed on several cases which discussed the choice of law in workmen's com-

---

[1] We do not here decide whether the advances by Caddie Homes to Falic fall within this special exception in whole or in part; such a determination cannot be made solely on the pleadings before us but must await a trial of the issues. We cite this section merely to point out that attachment of compensation benefits is not in certain instances antithetical to our public policy. Nor do we here decide whether local exemption statutes may serve only to protect Pennsylvania employees or residents and, if so, whether such a scheme is constitutionally permissible.

pensation cases. Although originally utilizing a strict standard which depended entirely on the place of contract, *Bradford Electric Company v. Clapper,* 286 U.S. 145 (1932), the Supreme Court in recent years, has looked more to an analysis of the interests of the various states in determining whether a state's law. should apply. See *Carroll v. Lanza,* 349 U.S. 408 (1955). In this regard, the development has, to a certain extent, paralleled our own Commonwealth's rule of choice of law as enunciated in *Griffith v. United Air Lines,* 416 Pa. 1, 203 A. 2d 796 (1964).

On this basis, Employers argues. that the law of the forum. should not apply because: (1) the insurance policy was written in Chicago; (2) both Falic and the subsidiary by which he was directly employed were located in Maryland; and (3) the injury occurred in Maryland. Our Commonwealth's only interest in this case is that the parent employer is a Pennsylvania corporation. Employers contends that an employer should not be permitted. to avoid the express policy of its state's workmen's compensation statute merely by dealing with an insurance company domiciled in another state. See Currie and Schreter, supra.

We decline to adopt Employers' position in this case, however. First, the Maryland statute upon which Employers' argument rests has never been construed to allow an exemption under the present circumstances. Further, there is reason to suspect that the Maryland courts might hold that the bar against attachment does not apply to advances made by an employer.

It has long been recognized that the Maryland Act was modeled on the Ohio workmen's compensation act, and that Maryland has accorded great weight to decisions of the Ohio courts in this regard. See *State Accident Fund v. Jacobs,* 140 Md. 622, 630, 118 A. 159, 162-3 (1922). The courts in Ohio have held that money advanced by the employer to an injured employee for

immediate and necessary relief may be recovered from the award. *State ex rel. Hunt & Dorman Mfg. Co. v. Industrial Commission,* 108 Ohio St. 139, 140 N.E. 621 (1923).

Moreover, many other states have recognized that, despite a statutory nonassignability clause, agreements which provide that an employer who advances money to an employee will be repaid out of compensation benefits are enforceable. "This is because the employee is, as a practical matter, being advanced the amount of his compensation by his employer, and is thus receiving the full benefit of it." *Dean v. Safety Casualty Co.,* 190 S.W. 2d 750, 754 (Tex. Civ. App. 1945). See also *Ruehmann v. Consumers Ice & Fuel Co.,* 192 Minn. 596, 257 N.W. 501 (1934); *Gregg v. New Careyville Coal Co.,* 161 Tenn. 350, 31 S.W. 2d 693 (1930); *Western Casualty Co. v. Hunt,* 69 F. 2d 129 (5th Cir. 1934).

Thus, it is possible that a Maryland Court might similarly decide that the attachment in this case is permissible. Indeed, the policy for a blanket rule against attachment is balanced by the equally persuasive policy for the rule followed in Pennsylvania and in other states. Employers should be encouraged to advance such sums to employees who are awaiting settlement; if employers are not permitted to attach such compensation benefits they will be discouraged from making such advances, rendering an unnecessary hardship upon injured employees.

Despite this uncertainty in the law, however, Employers did not apprise the Maryland Compensation Commission of the attachment in July of 1965 until after it had made weekly payments for five months and a final payment of $4,885.44. It did not seek relief in the Pennsylvania Courts nor attempt to have the matter transferred to a Maryland court on the theory that Pennsylvania was a forum non conveniens. Indeed, it did

not even inform Caddie Homes that it was continuing to make such payments and allow Caddie Homes to demand a clarification of the issue. Moreover, if Employers had felt that it could not under Maryland law curtail such payments for even one day, it could have requested clarification even while the weekly payments were being made; it could have opposed the payment of a large final sum in settlement and continued paying smaller weekly amounts until the issue was resolved. Instead, it paid $7,844.33 to defendant, thereby ignoring our attachment and defying our Commonwealth's injunction. We do not choose at this point, therefore, to conjecture as to the possible decision of the Maryland authorities or to assume that they would have reached a policy contrary to our own. To recognize any exemption which exists under the Maryland Act would, in itself, represent a great departure from our prior practice. To do so when we are without any clear statement as to the actual status of Maryland law, particularly when this uncertainty results from the deliberate inaction of Employers, represents too great a step, one which we are not prepared to take at this time.

Finally, consideration must be given to an additional point raised by Employers. Employers argues that the property in its possession was not subject to attachment, because the debt upon which it was based was conditional. This contingency arises from the fact that if Falic were to settle his case against the third-party tortfeasor, Employers' obligation to make future payments would terminate and it would be entitled to reimbursement for payments made to Falic prior to the date of settlement. Maryland Workmen's Compensation Act, Article 101, Section 58.

This argument, while superficially appealing, is inappropriate in this case. We recognize that in the past, our courts have often stated that the debt attached

must not be contingent. Some question has been raised as to the continued stringency of this rule and to its meaning under the Pennsylvania Rules of Civil Procedure. See 3A Anderson, Pennsylvania Civil Practice, pp. 196-7 (1963) ; *Pellerito v. Seiden Sports Wear, Inc.*, 20 Pa. D. & C. 2d 281 (1959), however, in light of today's opinion.

The clear purpose of our earlier holdings that the debt must not be contingent was to protect the garnishee and assure that he would not be required to transfer his assets if his debt might never arise. Similarly, there is the recognition that the garnishing creditor cannot recover from the garnishee until the debt attached becomes due and payable. In other words, the attaching creditor stands, with respect to the garnishee, in the position of his debtor, and cannot demand more from the garnishee than could the debtor himself. See 3A Anderson, Pennsylvania Civil Practice, supra.

With this understanding of the rules of attachment, we now turn to the facts in this case. On the date of the filing of the writ, there was a debt actually owed for that week, or day to Falic by Employers by reason of the order of the Maryland Workmen's Compensation Commission. It was this property of Falic that the writ attached. Subsequently, by its terms, the writ attached the payments owed for later weeks as they became due and payable. See *Hays v. Insurance Co.*, 99 Pa. 621 (1882) ; Pa. R. C. P. No. 1258.

The fact that Falic's right to receive future weekly payments might be modified or eliminated through the settlement of his claim against the third-party tortfeasor, cannot affect the unconditional nature of the weekly payments actually owing and paid prior to the settlement. Cf. *Stewart v. Stewart*, 127 Pa. Superior Ct. 567, 193 A. 860 (1937). Similarly, the fact that Employers would be entitled to be reimbursed for money

paid prior to settlement does not alter the nature of that debt. It is merely a recognition of the fact that as insurer, by paying this debt, Employers became subrogated to Falic's right to recover from the third-party tortfeasor. Indeed, Employers' right to reimbursement in this regard would remain exactly the same regardless of whether the payments were to be made to Caddie Homes or to Falic. In short, the allowance of the attachment in no way worked to Employers' detriment.

The impropriety of Employers' argument is further highlighted by reference to the public policy of our forum, at least insofar as it relates to the Pennsylvania Workmen's Compensation Act. As we have noted, our legislature has determined that an employer who advances money to his injured employee should have the right to protect himself by attaching subsequent compensation benefits. It would be highly inconsistent if this protection were dependent on the presence or absence of a claim against a potential third-party tortfeasor, real or imagined. Such a result would be contrary to common sense and do violence to the manifest object and intent of our legislature.

For the aforesaid reasons, the judgment of the lower court will be affirmed.

Judgment affirmed.