## Austin v. Westinghouse Electric Corp.

*Edward Cailor*, for plaintiff.
*W. Allen Dill*, for defendant.

ACKER, J., November 22, 1972.—This action in equity is an effort to force Westinghouse Electric Corporation to discontinue a wage garnishment upon a valid judgment obtained against plaintiff in the State of Ohio. The effect of the proposed order would be to either force Westinghouse to stand a possible contempt citation in Ohio for failure to comply with the order there obtained or to honor the judgment in Ohio and pay the debt for plaintiff from its own funds. The law, equity and facts are all against plaintiff's position.

From a stipulation plaintiff is employed in Sharon, Mercer County, Pa., by defendant corporation. Westinghouse maintains an office in Youngstown, Mahon-

ing County, Ohio. The Citizens Budget Company of Youngstown, Ohio, initiated a wage garnishment proceeding against plaintiff. She did not appear to contest the garnishment action. That garnishment was obtained in the State of Ohio against Westinghouse. The judgment arises from a retail installment contract entered into by plaintiff and her husband when Modern Trend Agencies of Youngstown, Ohio, assigned those contracts to Citizens Budget Company. Neither of the last mentioned organizations have offices in the Commonwealth of Pennsylvania, nor do they do business here. The judgment was in the amount of $430.58 and was obtained in the Municipal Court, City Hall, Youngstown, Ohio. The garnishment was served upon Westinghouse at 246 W. Wood Street, Youngstown, Ohio. Pursuant thereto Westinghouse has been withholding sums from the wages of plaintiff.

Although it is claimed in plaintiff's brief that the reason for withholding payment by plaintiff was that the products purchased were defective, this was not alleged in the complaint in equity nor is it admitted in the statement of facts. In any event, it is immaterial to the resolution of this matter.

The complaint in equity alleges that defendant is honoring a wage garnishment in violation of 42 PS §886.[1] Westinghouse answers that it is but honoring the wage garnishment which does not violate Pennsylvania law since the attachment is in the State of Ohio served on Westinghouse in that State for a debt contracted in Ohio by plaintiff. It claims that the wage garnishment in the State of Ohio does not violate any

---

[1] This is the Act of April 15, 1845, P. L. 459, 42 PS §886. This statute provides that the ". . . wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer."

law of the Commonwealth of Pennsylvania since it is an action of court of competent jurisdiction in a foreign State.

Although by the language of the Act of April 15, 1845, supra, the jurisdiction and authority of magistrates only as referred to it has been extended to all judgments in whatever court they may have been entered.[2]

To give strength to the Act of 1845, supra, the legislature passed the Act of May 23, 1887, P. L. 164, 12 PS §2175, as amended, making it unlawful for any person being a citizen of the Commonwealth to institute an action on or transfer or assign a claim for debt against a resident of the Commonwealth for the purpose of having the same collected by proceedings in attachment in courts outside of the Commonwealth. By this statute such a person is made liable in an action of debt to a person or persons for whom such claim shall have been collected by attachment.[3]

To ease the burden upon a Pennsylvania citizen attempting to prove a violation of the statute, the legislature, by the Act of June 7, 1915, P.L. 866, sec. 1, 12 PS §2176, established that prima facie evidence of an intention and purpose to violate the provisions of the statute is established by proof of the assignment or transfer of any claim against the plaintiff in the commencement of prosecution in a court outside of the Commonwealth of proceeding in attachment or garnishment thereon which might, could or do de-

---

[2] Catlin v. Ensign, 29 Pa. 264 (1857); Hollander v. Kressman, 143 Pa. Superior Ct. 32, 17 A. 2d 669 (1941).

[3] This act has been held to properly be the basis of a criminal action for conspiracy by persons attempting to avoid the statute by assignment of a claim and collection upon wages outside of the Commonwealth: Commonwealth v. Stambaugh, 22 Pa. Superior Ct. 386 (1903).

prive the plaintiff of the benefit of the right to have his personal earnings or property exempt.

However, if a valid judgment is obtained against an employe who would normally have the benefit of the Act of 1845 but in a foreign jurisdiction and to then attach wages in the hands of the employer in that jurisdiction, assuming that proceedings to be without collusion, the Pennsylvania employe may not set up the Act of 1845 to prevent the collection of the moneys. The foreign jurisdiction may disregard the Pennsylvania act exempting the laborer from attachment in the hands of the employer: Morgan v. Neville, 74 Pa. 52 (1873), specifically reaffirmed in Bolton v. Pennsylvania Company, 88 Pa. 261 (1878). As recently as 1967 in Caddie Homes, Inc. v. Falic, 211 Pa. Superior Ct. 333, 235 A. 2d 437, the Pennsylvania Superior Court reviewed the law in such situations in Pennsylvania and elsewhere, concluding that the law of the forum controls whether laws of attachment and exemption shall be applied. Citing Bolton v. Pennsylvania Company, supra, as well as Morgan v. Neville, supra, reinforced by Sanders v. Armour Fertilizer Works, 292 U.S. 190 (1934), and Clark v. Williard, 294 U.S. 211 (1935). As recently as 1969 the United States District Court for the Eastern District of Pennsylvania in Massachusetts Mutual Life Insurance Company v. Central-Penn National Bank of Philadelphia, 300 F. Supp. 1217 (1969), reaffirmed the principle of Bolton v. Pennsylvania Company, supra, and Caddie Homes, Inc., supra, concluding that because wage assignments are valid under the law of Massachusetts the courts of Pennsylvania will give effect to such attachments and will uphold their validity, even though the wages were earned by a citizen of Pennsylvania in Pennsylvania.

The enforcement of a valid Ohio judgment is not

one of comity but of constitutional law. Under Article V, Clause 1 of the Constitution of the United States if there is no question of subsequent payment or of jurisdiction of the person or subject matter being involved full faith and credit must be given to that judgment in all the other courts of the country even though it is repugnant to the statutes of the State where it is sought to be enforced: Engineers National Bank v. Drew, 311 Pa. 59, 166 Atl. 376 (1933).

The specific situation presently before this court was decided adversely to the wage earner and in favor of the employer in Galbraith v. Rutter, 20 Pa. Superior Ct. 554 (1902). There plaintiff was indebted to defendant in a small amount for groceries. Both lived in Altoona, Pennsylvania. Plaintiff was employed as a painter by the Pennsylvania Railroad Company. Defendant assigned the claim to a third person living in West Virginia conducting a collection and detective agency. Proceedings were brought in West Virginia against plaintiff and the Pennsylvania Railroad Company as garnishee. Although no process was served on plaintiff there judgment was entered against him. The railroad questioned the jurisdiction in West Virginia but the matter was decided against it by the justice of the peace in that State. It then notified its employe that his wages would be withheld because of the attachment in West Virginia. Plaintiff filed a bill in equity, just as in the instant case, against the railroad but also including the grocer to whom the debt was owed. The lower court entered an injunction both against the grocer and the railroad directing that the latter no longer attach the wages. That decree was the subject of the appeal and was reversed as to the employer while the decree as to the creditor was affirmed. Dealing with the employer it was concluded, page 556:

"He [the wage earner] has an adequate remedy

at law against the railroad company for his wages in Pennsylvania. If, in such action, it should appear that the moneys had been paid voluntarily, and improperly or unlawfully, the plaintiff's right of recovery would not be defeated. So also if the railroad company should pay under a judgment against them as garnishees recovered in West Virginia, the judgment would afford no protection against the claim of their creditor in Pennsylvania, if it could be shown that the court entering the foreign judgment was, for any sound reason, without jurisdiction . . . There seems to be no equitable ground upon which to sustain the decree made by the court below in respect to the defendant taking this appeal."[4]

Wherefore, the prayer of the petition for an injunction could be dismissed on the authority cited above. However, there are two additional factors which require consideration. First, the plaintiff prays, inter alia, that all moneys that the defendant has paid to the Citizens Budget Company of Youngstown under the wage assignment together with interest be repaid by the defendant. Therefore, the action does incorporate the same relief that would be forthcoming in the event of a proper action in assumpsit were filed in law against Westinghouse. A ready answer to this contention is that if the sole reason for equity entertaining jurisdiction is that to award money damages it should refer the matter to the law side of the court for disposition.[5]

The second contention of more concern is that by

---

[4] Prazich v. Alwine, 49 D. & C. 353 (1944). A Pennsylvania Common Pleas Court using Galbraith v. Rutter, supra, similarly held that an action in equity for an injunction brought against an employer would not lie.

[5] King v. Clark, 183 Pa. Superior Ct. 190, 130 A. 2d 245 (1957); Pa. R. Civ. P. 1509(c).

application of the principle of Griffith v. United Air Lines, Inc., 416 Pa. 1, 203, A. 2d 796 (1964), Pennsylvania should apply its own law and, therefore, grant the injunction and award damages. The Griffith case concludes, page 21:

". . . we are of the opinion that the strict lex loci delicti rule should be abandoned in Pennsylvania in favor of a more flexible rule which permits analysis of the policies in interests underlying the particular issues before the court . . ."

This is an approach to the choice of law doctrine. However plaintiff cannot use that doctrine to defeat the application of Article VI, Clause 1 of the United States Constitution which requires full faith and credit to be given in each State to the judicial proceedings of every other State. The interpretation as proposed by the plaintiff would completely emasculate the Federal Constitution to permit a State to give full faith and credit only when it felt it was to the best interest of its own citizens to do so. This is a complete misunderstanding of the full faith and credit clause. Dealing with this subject is Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S. Ct. 208 (1944), at page 213:

"The full faith and credit clause and the Act of Congress implementing it had for the most purposes placed a judgment on a different footing from a statute of one state, judicial recognition of which is sought in another."

Further at page 213:

"Nor are we aware of any considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause and the Act of Congress require to be given to such a judgment outside the state of its rendition."

And at page 214:

"Because there is a full faith and credit clause a de-

fendant may not a second time challenge the validity of the plaintiff's right which has ripened into a judgment and a plaintiff may not for his single cause of action secure a second or greater recovery."[6]

A further discussion of the meaning of the full faith and credit clause is in Milwaukee County v. M. E. White Company, 296 U.S. 268 (1935), at page 276:

"The very purpose of the full faith and credit clause was to alter the status of the several states as independent foreign sovreignties, each free to ignore obligations created under the laws or by judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin. That purpose ought not lightly to be set aside out of deference to a local policy which, if it exists, would seem to be too trivial to merit serious consideration when weighed against the policy of the constitutional provision and the interest of the state whose judgment is challenged."

Full faith and credit requires enforcement of a judgment of another State although it was barred by the statute of limitations where the judgment was rendered or where the original suit was upon a gambling contract or if upon a wrongful death statute even though the State of enforcement of the judgment may not have authorized such suits.[7] Wherefore, the issue

---

[6] It is to be noted in the case at bar that plaintiff did not attempt to attack the rendering of the judgment or the attachment in the State of Ohio, and, therefore, that State is not even required to know of the Pennsylvania statute which is contrary to its law. The Ohio statute permitting attachment for wages is found in Ohio Revised Code, section (a) in 2715.01 (Baldwin 1964), and sections 2715.11, 2329.62, 2329.66 and 2715.02.

[7] Sanders v. Armour Fertilizer Works, supra, holds that a final judgment in Illinois against a garnishee prior to the one in another

is not whether to apply Pennsylvania or Ohio law as in Griffith, supra, but rather whether to force Westinghouse to either ignore a valid attachment or pay the judgment from its own funds.

In that this court desires to settle the matters between the parties without either transferring the action to the law side or requiring the necessity of a separate action being instituted by plaintiff in assumpsit, consideration is directed as to whether Westinghouse has paid voluntarily, improperly or unlawfully the judgment obtained in the State of Ohio or that the court in Ohio entered the judgment without sound reason and without jurisdiction.[8]

Considering the stipulation of facts there is no allegation that the judgment was not voluntarily, properly and lawfully entered; nor is it alleged that the Ohio court entered the foreign judgment without sound reason or without jurisdiction. Rather, all the factual defenses must be resolved against the plaintiff. Finally, the court looks to see if there is any equitable grounds upon which to sustain the decree. To require Westinghouse to pay the debt for a plaintiff who did not raise any of the contentions now presented when the matter was being litigated in the Ohio courts even that the

---

jurisdiction is conclusive of the rights of the parties even though in the State of Texas where the action is instituted upon the garnishment the Texas Homestead Exemption Statute would have prevented the fund to be subject to the judgment. In Fauntleroy v. Lum, 210 U.S. 230 (1908), in an opinion by Justice Holmes a judgment obtained upon a gambling transaction in Cotton Futures in the State of Mississippi was enforced in the State of Missouri even though by that State's law the judgment would have been unenforcible. The Supreme Court of Mississippi did not have the right to refuse to enforce the judgment simply because it was contrary to its own law.

[8] This is the test laid down by the Superior Court in Galbraith v. Rutter, supra, at page 556.

goods were of inferior quality would be a gross injustice. Westinghouse should not be required to stand a contempt citation by the Ohio courts nor should it be required to pay plaintiff's debts. Therefore, plaintiff is completely devoid of equity. Hence, this order.

ORDER

And now, this November 22, 1972, it is hereby ordered and decreed that the prothonotary of this court shall enter a judgment in favor of Westinghouse Electric Corporation, defendant, and against plaintiff, Dorothy Austin.